MT PROPERTIES, INC., Petitioner, Respondent,

v.

CMC REAL ESTATE CORPORATION, a Wisconsin Corporation, formerly known as Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Appellant.

No. CX–91–1054.

Court of Appeals of Minnesota.

Feb. 25, 1992.

Timothy R. Thornton, Colleen V. Short, Briggs and Morgan, P.A., Minneapolis, for respondent.

Terence M. Fruth, Norman J. Baer, Fruth & Anthony, P.A., Minneapolis, for appellant.

Considered and decided by NORTON, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

CMC Real Estate Corporation owned a minority interest in MT Properties, Inc. In a proceeding brought to determine the value of CMC's shares as a dissenting shareholder, the trial court dismissed CMC's challenge to the valuation of its interest provided by MT. The trial court found: the amount tendered by MT was the correct amount, this amount would be further reduced by an outstanding debt of $63,000 owed to MT, and CMC's refusal of the tendered offer was meritless such that MT was entitled to an award of costs and attorney fees totaling $100,714.67. Because we conclude that the trial court improperly discounted the value of CMC's shares, we reverse and remand.

## FACTS

By the beginning of 1987, there were five railroad corporations which owned the Minnesota Transfer Railway Company. One of these companies was CMC, formerly known as the Chicago, Milwaukee, St. Paul & Pacific Railroad Company. CMC held a one-ninth ownership interest in Minnesota Transfer.

For a number of reasons, the majority of shareholders of Minnesota Transfer sought to merge the corporation with another railroad company and lease all of the railroad operations to a third person. The companies merged on February 17, 1987 and the surviving corporation was renamed MT Properties.

At the time of the merger, CMC asserted its dissent pursuant to Minn.Stat. §§ 302A.471, 302A.473 (1986), triggering its statutory right to receive the "fair value" of its shares in the corporation. Subsequently, MT tendered to CMC its estimate of CMC's share of the corporation's value on February 16, 1987: $559,084.68, plus interest. CMC disputed this amount and demanded a supplemental payment. MT refused and brought suit as petitioner under Minn.Stat. § 302A.473, subd. 7.

After a two week trial, the district court concluded that MT's earlier valuation had been entirely appropriate and that CMC's challenge was essentially baseless. Pertinent to this appeal the trial court found that: the base value of the corporation was $9,451,000; CMC's claimed value of $25 million was unsupported by the evidence; the base value should be reduced by $3 million (31% of the base value) to reflect environmental and labor contingency concerns; the value of CMC's shares in the corporation would be further discounted by twenty-two percent to reflect its minority status; the value of CMC's shares was $559,084.68 plus interest; CMC owed MT $63,000 from a preexisting debt; and MT was entitled to an award of attorney fees and costs in the amount of $100,714.67.

## ISSUES

1. Did the trial court improperly calculate the value of CMC's shares in MT by including a discount for CMC's minority status?

2. Did the trial court improperly determine the allocation of costs and fees between the parties?

3. Was there sufficient evidence for the trial court to conclude that CMC owed a preexisting obligation to MT in the amount of $63,000?

## ANALYSIS

■ The trial court's findings of fact will not be set aside unless the reviewing court finds them to be clearly erroneous. Minn.R.Civ.P. 52.01; *see In re Trust Known as Great N. Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (reviewing court will set aside trial court findings of fact if it strongly believes that mistake has been made), *cert. denied*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976); *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975) (valuation of property is a finding of fact which will not be set aside unless clearly erroneous on the record as a whole). Questions of law are reviewed de novo. *Karst v. F.C. Hayer Co.*, 447 N.W.2d 180, 181 (Minn.1989).

### 1. Minority Discount

#### a. Analysis of facts

■ Before discussing the law on this issue, we must first examine characteristics of the twenty-two percent discount the trial court applied to the value of CMC's shares. CMC contends the discount focuses on the minority status of their shares. MT contends that the discount represents a marketability discount which was properly applied to the value of the corporation as a whole.

The trial court found expert testimony had established that the discount reflected "the unmarketable nature" of CMC's shares. We initially observe, however, that the voluminous findings of fact in the trial court's order contain several inconsistencies which cast doubt upon this description of the discount. At one point the court stated that the adjustment reflected a marketability discount which included a "minority liquidation discount." Trial Court Finding of Fact No. 123. Later the court noted the "unmarketable nature" of CMC's shares (Trial Court Finding of Fact No. 138), but also referred to CMC's minority interest as a basis for the discount (Trial

Court Finding of Fact No. 144). The court's calculation of the discount describes the twenty-two percent figure as a "minority and marketability" discount. Trial Court Finding of Fact No. 148.

More critically, the record reveals that the discount was designed solely to reflect CMC's minority status. The record reveals that the source of the twenty-two percent figure is MT's valuation expert, Benjamin Anderson of Standard Research Consultants. In his valuation summary report, Anderson stated that his twenty-two percent calculation represents a "minority discount" reflecting the inability of the shareholder to force a liquidation. At trial, Anderson testified that the discount was for CMC's minority interest. More importantly, Anderson stated that a marketability discount was considered yet never applied. Significantly, Anderson testified that in the instant case a marketability discount was not appropriate. Finally, the only other possible source of the twenty-two percent discount, MT's general counsel Gordon Forbes, based his figure on Anderson's work and stated that he basically adopted Anderson's approach.

Given this record, we find no merit in attempts to clothe the twenty-two percent discount in trappings other than those addressing the minority status of CMC's shares. There is simply no evidence in the record to support these attempts. The trial court's findings concerning marketability discounts are clearly erroneous because the twenty-two percent discount figure singularly reflects the fact that CMC owned a minority interest.

#### b. Discussion of law

■ Having established that the discount applied was attributable solely to the minority status of CMC's shares, our inquiry focuses on the validity of such a minority discount under Minnesota law. Minority interests in corporations are protected from certain fundamental corporate changes under Minn.Stat. § 302A.471 which enables the dissenting shareholder to "obtain payment for the fair value of the shareholder's shares" when the sharehold-

er dissents. Minn.Stat. § 302A.471, subd. 1. "Fair value of the shares" is defined as "the value of the shares of a corporation immediately before the effective date" of the corporate change. Minn.Stat. § 302A.473, subd. 1(c). Minnesota courts have never addressed whether the value of a dissenting shareholder's shares may be discounted for their minority status when determining "fair value."

CMC argues that, as a matter of law, a dissenter's share of a corporation's value should not be discounted because this penalizes the dissenter and operates against the purpose of statutory dissenter's rights. MT argues in response that a

> minority discount is typically applied because the fair market value of stock can only be realized if a shareholder has control. A minority shareholder does not have control, so his shares must be discounted.

Because this is an issue of first impression in Minnesota, we have examined authorities from other jurisdictions which have dealt with similar issues. The courts which have addressed the issue of minority discounts have split.[1] Courts in Delaware, Rhode Island, Iowa, Missouri, Maine, California, Colorado and Oregon are among those where minority discounts have been rejected in various circumstances.[2] These courts reason that allowing discounts to reduce the "fair value" of a dissenter's shares destroys legislation enacted to protect the minority's right to dissent from a fundamental corporate change:

> It is contrary to the purpose of the statute to discount the minority interest because it is a minority. This in effect would let the majority force the minority out without paying it its fair share of the value of the corporation.

*Woodward,* 257 Iowa at 1087, 133 N.W.2d at 43. The Delaware Supreme Court rejected application of minority discounts because consideration of this factor would contradict the statute's objective of requiring valuation of the corporation, not the shares of the corporation as they may exist in the hands of an individual shareholder. *Cavalier,* 564 A.2d at 1144.[3] The Oregon Court of Appeals reasoned that the dissenter faced a situation which left him little choice but to exercise his dissenter's rights: "To include a minority discount would simply penalize him while allowing the corporation to buy his shares cheaply." *Columbia Management,* 94 Or.App. at 206, 765 P.2d at 214.

Courts allowing minority discounts in certain circumstances include courts interpreting the laws of Tennessee, Georgia, Ohio, Indiana, Illinois, Kansas and Mississippi.[4] These courts hold that determining

---

1. The issue of marketability discounts is also split. Some courts hold that both discounts are inappropriate, some hold that they are both appropriate, while others hold that a marketability discount is appropriate, but not a minority discount. *See Columbia Management Co. v. Wyss,* 94 Or.App. 195, 204–05, 765 P.2d 207, 214 (1988) (discussing the difference between marketability and minority discounts), *rev. denied,* 307 Or. 571, 771 P.2d 1021 (1989). However, because the facts of this case do not involve application of a marketability discount, we express no opinion concerning the validity of such a discount under Minnesota law.

2. *See Hunter v. Mitek Indus., Inc.,* 721 F.Supp. 1102 (E.D.Mo.1989); *Brown v. Allied Corrugated Box Co.,* 91 Cal.App.3d 477, 154 Cal.Rptr. 170 (1979); *Walter S. Cheesman Realty Co. v. Moore,* 770 P.2d 1308 (Colo.Ct.App.1988), *cert. denied* (Colo. Mar. 20, 1989); *Cavalier Oil Corp. v. Harnett,* 564 A.2d 1137 (Del.1989); *Woodward v. Quigley,* 257 Iowa 1077, 133 N.W.2d 38, *modified on other grounds,* 257 Iowa 1077, 136 N.W.2d 280 (1965); *In re Valuation of Common*

*Stock of McLoon Oil Co.,* 565 A.2d 997 (Me. 1989); *Columbia Management,* 94 Or.App. 195, 765 P.2d 207; *Charland v. Country View Golf Club, Inc.,* 588 A.2d 609 (R.I.1991).

3. The Delaware statute refers to the "fair value of [the shareholder's] shares", as opposed to the fair value of the corporation. Del.Code.Ann. tit. 8, § 262 (1988); *see* Minn.Stat. § 302A.471, subd. 1 (statute refers to "fair value of the shareholder's shares"). However, the *Cavalier* court clearly stated that valuing a dissenter's shares involves valuing the corporation as a whole rather than the individual shares. *Cavalier,* 564 A.2d at 1144.

4. *See Hernando Bank v. Huff,* 609 F.Supp. 1124 (N.D.Miss.1985), *aff'd,* 796 F.2d 803 (5th Cir. 1986); *Perlman v. Permonite Mfg. Co.,* 568 F.Supp. 222 (N.D.Ind.1983), *aff'd,* 734 F.2d 1283 (7th Cir.1984); *Atlantic States Constr., Inc. v. Beavers,* 169 Ga.App. 584, 314 S.E.2d 245 (1984); *Stanton v. Republic Bank,* 144 Ill.2d 472, 163 Ill.Dec. 524, 581 N.E.2d 678 (1991); *Moore v.*

the value of a dissenter's shares by simply taking a pro rata share of the corporation's value is incorrect. *Armstrong,* 32 Ohio St.3d at 411, 513 N.E.2d at 789. Instead, discounts should be applied to avoid overpaying the dissenter as if he had a controlling interest. The pro rata share of the corporation's value is seen merely as a starting point. *Perlman,* 568 F.Supp. at 231–32.

It is evident this issue involves highly conflicting policy considerations. Either resolution of the issue risks unduly enlarging the value of some shares, either those of the remaining shareholders or those of the dissenter. However, because the legislature has enacted the statute with the evident aim to protect the dissenting shareholder, we must prohibit application of minority discounts when determining "fair value" in statutory dissenter's rights cases in Minnesota.[5] This result is also in accord with the approach of the majority of states which have addressed this issue. We proceed with the conviction that if the competing policy is more advantageous as a matter of public law, this issue will be reviewed by the legislature and its determination will be specifically pronounced in the statute.

### 2. Allocation of Costs and Fees

■ In a separate yet related issue, CMC disputes the trial court's award of costs and fees. The trial court denied CMC's claim for attorney fees and costs, found that CMC acted arbitrarily, vexatiously and in bad faith in prosecuting the action, and awarded attorney fees and costs to MT pursuant to Minn.Stat. § 302A.473, subd. 8.

Although no Minnesota case has interpreted the bad faith provision of Minn.Stat. § 302A.473, subd. 8, an award of fees and costs under the similar bad faith provision of Minn.Stat. § 549.21, subd. 2 (1986) will not be reversed absent a showing of abuse of discretion. *Blattner v. Forster,* 322

N.W.2d 319, 321 (Minn.1982). However, when a party prevails, even in part, the claim of bad faith must fail. *Dalco Corp. v. Dixon,* 338 N.W.2d 437, 441 (Minn.1983); *see also Block v. Target Stores, Inc.,* 458 N.W.2d 705, 713 (Minn.App.1990) (if a claim is colorable, an assessment of fees will be reversed), *pet. for rev. denied* (Minn. Sept. 28, 1990).

Because CMC's arguments concerning the discounting of share values for minority factors have merit, the trial court's award of costs and fees was inappropriate. While some of CMC's positions at trial may have been untenable, this alone cannot justify an award of attorney fees and costs to MT under either Minn.Stat. § 302A.473, subd. 8 or Minn.Stat. § 549.21, subd. 2.

Concerning CMC's demand for costs, expenses and attorney fees, Minn.Stat. § 302A.473, subd. 8(a) states that the court "shall determine" the costs and expenses of a valuation proceeding, under Minn.Stat. § 302A.473, subd. 7, and "shall assess" those costs against the corporation unless the dissenter acts vexatiously, arbitrarily or in bad faith. However, the costs which are presumed to be paid by the corporation do not include attorney fees. *See* Minn. Stat. § 302A.473, subd. 8(b) (fees may be assessed only when corporation acts vexatiously, arbitrarily or in bad faith).

Because CMC did not act in bad faith, MT cannot avoid paying the reasonable fees associated with the valuation proceeding under Minn.Stat. § 302A.473, subd. 7. However, because the record does not indicate the amount of CMC's costs, this case must be remanded for a determination of those fees which MT must reimburse CMC under Minn.Stat. § 302A.473, subd. 8(a).

### 3. Preexisting Debt

■ CMC also claims the trial court's finding that CMC owed $63,000 to MT was

---

*New Ammest, Inc.,* 6 Kan.App.2d 461, 630 P.2d 167 (1981); *Armstrong v. Marathon Oil Co.,* 32 Ohio St.3d 397, 513 N.E.2d 776 (1987); *Blasingame v. American Materials, Inc.,* 654 S.W.2d 659 (Tenn.1983).

5. We find unpersuasive the fact that this was not a "squeeze out" merger, one calculated to damage a minority interest. No doubt policy arguments for the dissenting shareholders are enlarged in those circumstances. However, the statutory safeguards of Minn.Stat. § 302A.471 equally provide for all dissenting shareholders.

erroneous because the issue was not pleaded or tried by consent. We agree.

Where a party does not seasonably object to evidence as outside the scope of the pleadings, the issues raised by that evidence shall be treated as if they had been raised in the pleadings. Minn.R.Civ.P. 15.-02; *Folk v. Home Mut. Ins. Co.*, 336 N.W.2d 265, 267–68 (Minn.1983); *see also Roberge v. Cambridge Coop. Creamery Co.*, 243 Minn. 230, 235, 67 N.W.2d 400, 404 (1954) (consent implied where novelty of issues "is reasonably apparent and the intent to try these issues is clearly indicated by failure to object or otherwise"). However, the mere reference to an issue by the parties does not constitute the intent to litigate the issue. The record reveals that references to the $63,000 debt were brief and collateral, and no attempt was made to amend the pleadings or examine the issues in even a cursory manner. Because of this, we conclude that the trial court improperly subtracted $63,000 from the amount owed by MT to CMC.

### 4. Other Issues

There are several other issues raised on appeal which we find are without merit. First, CMC challenges the base value of $9,451,000 established by the trial court. This challenge is unfounded because the trial court's determination of the base value is amply supported by the record. Significantly, the trial court detailed its rejection of CMC's higher valuation and thoroughly explained its acceptance of the large quantity of evidence establishing the $9,451,000 value. We can find no error in the court's determination of base value and the fact that this court could reach a different result does not warrant reversal.

Second, CMC challenges the $3 million discount that the trial court applied to the corporation's value to reflect environmental and labor concerns at the time of the merger. We find that the evidence is sufficient to support the trial court's findings.

■ Elements affecting value which "are not fairly shown to be reasonably probable" should not be considered in valuations. *Ramsey County v. Miller*, 316 N.W.2d 917, 921 (Minn.1982) (emphasis omitted) (quoting *Olson v. United States*, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (1934)). However, an event is reasonably probable if factors indicate the event "fairly might be brought forward and reasonably be given substantial weight" in "fair negotiations between an owner willing to sell and a purchaser desiring to buy." *Olson*, 292 U.S. at 257, 54 S.Ct. at 709.

■ In this case both environmental and labor contingencies were at the forefront of MT's negotiations with the future lessee of the property. The record reveals that the lessee was unwilling to enter into the transactions without an indemnification agreement for environmental liabilities and an escape clause in case of labor disputes. It is evident that these factors were given substantial weight in the transaction.

Moreover, the record details the environmental problems of railroads in general and MT in particular.[6] The record also supports the court's finding of potential labor disputes.[7] While this court may have reached different conclusions concerning the likelihood of environmental and labor liabilities, the record supports the trial court's decision that there were contingencies that affected the value of MT. In addition, the $3 million value placed on these contingencies is also supported by

---

**6.** The fact that many of the possible contamination sites along MT's tracks have not been investigated does not diminish the impact of the potential environmental liabilities on the corporation's value. The value of a corporation will reflect its potential exposure to liability, not just its known exposure. In the instant case, the record reveals that there is a high probability of undiscovered, yet serious environmental concerns and liabilities.

**7.** The record reveals that in 1987 the application of a favorable Interstate Commerce Commission ruling (allowing exemption from expensive labor protective conditions) to the lease was uncertain. The fact that this dispute was disposed of in MT's favor in 1990 does not affect the

the evidence.[8]

Third, CMC objects to the trial court's reliance on Gordon Forbes' valuation testimony because he is not a valuation expert. This objection has no merit. Under Minn. R.Evid. 702 a person may qualify as an expert by knowledge, skill, experience, training or education. The trial court heard ample evidence that Forbes qualified as an expert and we will not disturb the court's resolution that Forbes' opinion testimony could be considered.

Fourth, CMC objects to the trial court's half-day expedition to physically view the railroad property. CMC claims that the visit, which occurred four years after the merger, amounted to a judicial investigation and the trial court abused its discretion by relying on the fruits of its own investigation in making its decision. We disagree.

██ A finder of fact may view a site in order to better understand the testimony and evidence. *Briggs v. Chicago Great W. Ry.*, 243 Minn. 566, 570, 68 N.W.2d 870, 872 (1955); *Claesgens v. Animal Rescue League*, 173 Minn. 61, 63, 216 N.W. 535, 536 (1927). A decision will not be reversed if it is clear that the court did not gather evidence. *Claesgens*, 173 Minn. at 63, 216 N.W. at 536.

We do not believe the record indicates that the trial court collected evidence during its visit to corporate property. Moreover, the findings of fact cited by appellant were not critical to the court's decision and were not the sole source of the information. Finally, although the trial court's memorandum contains a narrative of the viewing, nothing in the memorandum indicates that this was the basis of any finding of fact or conclusion of law. We decline to infer that the trial court erred from the mere fact that the trial court described in detail the sites viewed during a physical visit.

## DECISION

We reverse and remand to the trial court for entry of a judgment in favor of CMC reflecting a value of $716,778 for its shares as of February 17, 1987. In addition, CMC is not liable for any of MT's costs or attorney fees, nor should CMC's share be reduced by the alleged debt of $63,000. Otherwise, we affirm the trial court's decision.

Taking into account prior payments by MT to CMC, CMC is entitled to a judgment for $157,693.39, which is the amount attributable to the improper twenty-two percent reduction. CMC is also entitled to unpaid interest, as calculated previously by the trial court, plus interest on $157,693.39 for the period of February 17, 1987 through the date of the final judgment. In addition to determining the appropriate interest owed, the trial court must determine the reasonable costs which should be assessed against MT and paid to the dissenter, CMC, pursuant to Minn.Stat. § 302A.473, subd. 8(a).

Affirmed in part, reversed in part and remanded.

---

calculation of the potential for labor disputes and liabilities in 1987.

**8.** Despite CMC's contentions, the lack of mathematical precision does not detract from the evidence supporting the calculation and is not surprising given the uncertain nature and extent of liability exposure. *See Richardson v. Palmer Broadcasting Co.*, 353 N.W.2d 374, 377 (Iowa 1984) ("fair value" not susceptible of determination by precise mathematical computation and no one formula or figure is binding or conclusive).