**SPINNAKER SOFTWARE CORPORATION, f/k/a Springboard Software, Inc., Petitioner, Appellant,**

v.

**Anthony Valentine NICHOLSON, et al., Respondents.**

**Nos. C1–92–983, C5–92–1506.**

Court of Appeals of Minnesota.

Feb. 2, 1993.

Review Denied March 30, 1993.

Allen W. Hinderaker, Polly A. Maier, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, Bernard J. Bonn, III, Dechert, Price & Rhoads, Boston, MA, for appellant.

Richard G. Wilson, Mary R. Vasaly, Maslon, Edelman, Borman & Brand, Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., and RANDALL and PETERSON, JJ.

## OPINION

DAVIES, Presiding Judge.

Appellant challenges the trial court's valuation of shares held by respondent, a dissenting shareholder. Appellant also challenges the trial court's award of attorney fees to respondent. We affirm.

## FACTS

Springboard Software, Inc. ("Springboard"), was incorporated in Minnesota in 1982. Following a public offering in November 1986, Springboard's common stock traded on the NASDAQ National Market System. Springboard creates and markets software programs for personal computers.

Respondent Anthony Nicholson ("Nicholson") was a shareholder of Springboard from 1984 through July 19, 1989. He was a member of Springboard's board of directors from November 1984 to July 19, 1989. On that date, Nicholson owned 103,853 shares of Springboard common stock and 28,814 shares of Springboard preferred stock. Nicholson also owned, as custodian, 3,250 shares of common stock for each of his two sons.

On May 1, 1989, Springboard's board of directors met to consider management's recommendation to approve a merger agreement between Springboard and appellant Spinnaker Software Corporation ("Spinnaker"). The board voted unanimously to enter into a merger agreement and to submit the matter to the shareholders. Nicholson sought and received assurances from Springboard's counsel that for him to vote in favor of the merger would not preclude him later from voting against the merger as a shareholder and from exercising his right to be paid the fair value of his shares under Minn.Stat. §§ 302A.471 and 302A.473. Board approval of the agreement was announced on May 2, 1989.

To preserve Springboard's publicly traded status, the merger was structured so that Springboard would acquire Spinnaker, with the merged entity taking "Spinnaker" as its name. Because Springboard was the smaller company, Springboard shareholders were to receive only 38 percent of the shares in the merged entity, with Spinnaker shareholders receiving the remaining 62 percent.

On or about June 27, 1989, Springboard and Spinnaker issued a prospectus and joint proxy statement describing the merger to their respective shareholders. A footnote to Spinnaker's financial report, attached to the prospectus, indicated that Spinnaker intended to book the transaction as an acquisition of Springboard with an estimated purchase price of approximately $5.4 million, based on the market price of Springboard stock (although no date for this price was given).

The shareholders approved the merger on July 19, 1989. Nicholson, individually and as custodian for his sons, dissented and thereafter perfected his rights as a dissenting shareholder under Minn.Stat. § 302A.473, entitling him to the fair value of his shares. In December of 1989, Spinnaker paid Nicholson $.90 per common share and $1.575 per preferred share, representing these values as the fair value of his shares. Nicholson rejected Spinnaker's evaluation of his interest in Springboard and provided Spinnaker with his own estimate, based on the mid-point of the market price per share of Springboard common stock on May 1, 1989, as indicated by the prospectus. Nicholson claimed the value of his common shares was $1.75 and of his preferred shares, $3.00.

Spinnaker did not respond to Nicholson's estimate and, instead, brought this action under Minn.Stat. § 302A.473, subd. 7, seeking a judicial valuation of Nicholson's interest as an individual and in his custodial capacity. After a three-day bench trial in November 1992, the trial court concluded that the fair value of Nicholson's common shares was $2.16 and the fair value of his preferred shares was $3.00. Accordingly, the trial court awarded Nicholson $174,835.92 more for his shares. Because Spinnaker substantially failed to pay Nicholson

for the fair value of his shares, the trial court also awarded Nicholson $54,902.37 for attorney fees, costs, and disbursements.

Spinnaker filed this notice of appeal contesting both awards.

## ISSUES

I. Does this court's decision in *MT Properties, Inc. v. CMC Real Estate Corp.*, 481 N.W.2d 383 (Minn.App.1992), require that Nicholson's proportionate interest be valued using the price Spinnaker's accountants used to record the transaction?

II. Does the doctrine of equitable estoppel apply to bar Nicholson from asserting a value for his shares greater than the amount recorded on Spinnaker's books?

III. Did the trial court err in awarding Nicholson his costs and attorney fees under Minn.Stat. § 302A.473, subd. 8(b)?

IV. Is Nicholson entitled to costs and disbursements on appeal?

## ANALYSIS

I. Valuation Based on Purchase Price

■ Upon a fundamental corporate change, such as merger, Minn.Stat. § 302A.471 subd. 1 (Supp.1991), allows a minority shareholder to dissent from the corporate action. The dissenting shareholder is entitled to receive the "fair value" of shares held if the shareholder follows the appropriate procedures for dissenting and is further entitled ultimately to have the trial court make a binding determination of fair value. Minn.Stat. § 302A.473 (1990).

In determining "fair value" of the shares, Minn.Stat. § 302A.473, subd. 7, provides:

The court * * * shall determine the fair value of the shares, taking into account any and all factors the court finds relevant, computed by any method or combination of methods that the court, in its discretion, sees fit to use, whether or not

used by the corporation or by a dissenter.[1]

Spinnaker argues that the trial court's valuation of Nicholson's shares must be reversed in light of this court's holding in *MT Properties, Inc. v. CMC Real Estate Corp.*, 481 N.W.2d 383 (Minn.App.1992). Spinnaker argues that *MT Properties* mandates that Nicholson's shares be valued as a pro rata share of the purchase price of Springboard negotiated by Springboard and Spinnaker in their merger agreement.

In *MT Properties*, this court reviewed whether "fair value" could include a discount of the dissenting shareholder's shares to reflect their minority status. *Id.* at 386–88. Because it was a case of first impression, this court examined cases from other jurisdictions. *Id.* at 387–88.

Spinnaker relies on language in *MT Properties* that "valuing a dissenter's shares involves valuing the corporation as a whole rather than the individual shares." *Id.* at 387 n. 3 (citing *Cavalier Oil Corp. v. Harnett*, 564 A.2d 1137, 1144 (Del.1989)). Spinnaker claims that this supports its assertion that this court has chosen to follow the American Law Institute's Tentative Draft No. 11 of the Principles of Corporate Governance § 7.22 (the "ALI standard") and the rule of the Massachusetts Court of Appeals in *BNE Mass. Corp. v. Sims*, 32 Mass.App.Ct. 190, 588 N.E.2d 14, 21 (1992). These authorities establish the principle that, in valuing the corporation as a whole, a court ought to use the purchase price of the company when the price has been negotiated in an arms-length transaction. The ALI standard is, however, somewhat qualified.

The ALI standard states:

§ 7.22 Standards for Determining Fair Value

(b) In the case of a business combination that gives rise to appraisal rights, * * *

as the court finds the result to be the fair value of the shares as of the effective date of the action. No method is recommended because the different methods of measuring value (market, book, replacement, capitalization of earnings, etc.) are neither right nor wrong, but merely appropriate in different situations.

---

1. The comment prepared by the reporter for the Advisory Task Force on Corporation Law, found at Minn.Stat.Ann. § 302A.473, subd. 7 (West 1981), further explains:

   The court has complete control of the proceedings and may use any valuation method or combination of methods it sees fit, as long

the aggregate price accepted by the board of directors of the subject corporation should be presumed to represent the fair value of the corporation, * * * unless the plaintiff can prove otherwise by clear and convincing evidence.

The Massachusetts Court of Appeals gave credence to this standard in *BNE*, finding that the trial court could appropriately determine the blended cash value of the merger price for the company (assuming it was negotiated in an arms-length transaction) in arriving at the fair value of the dissenter's shares. *BNE*, 588 N.E.2d at 20.[2]

Despite Spinnaker's assertion to the contrary, *MT Properties* does not go so far; it does not stand for the rule that the purchase price of a corporation is presumed to be its fair value for purposes of determining the fair value of a dissenting shareholder's shares. It holds only that minority discounts are inappropriate. *MT Properties*, 481 N.W.2d at 388. And, even were we to apply the ALI presumption, Spinnaker's argument would fail here. Spinnaker argues that the purchase price for Springboard was $5.4 million, based on the footnote to Spinnaker's financial records attached to the prospectus. The evidence shows that the merger transaction involved an exchange of shares for a percentage of ownership in the merged entity and that the $5.4 million was merely the amount that Spinnaker's accountants used to represent the transaction for accounting purposes. We are not persuaded that a preponderance of the evidence shows the $5.4 million was the purchase price or fair value of Springboard as negotiated in an arms-length transaction.

■ Valuation of property is a finding of fact which an appellate court will reverse only if clearly erroneous. Minn.R.Civ.R. 52.01; *see MT Properties*, 481 N.W.2d at 386, 389–90. We conclude that the trial court's findings in support of its valuation are supported by the evidence and the testimony of Nicholson's expert witness. The

method of valuation used by Nicholson's expert and adopted by the trial court in determining the value of Nicholson's common shares falls within the broad discretion accorded the trial court under Minn. Stat. § 302A.473. The evidence also supports the trial court's finding regarding the value of Nicholson's preferred shares.

## II. Equitable Estoppel

■ Spinnaker argues that in calculating the fair value of his shares, Nicholson is equitably estopped from asserting a fair value for the corporation greater than the amount Spinnaker's accountants used to record the merger transaction. Spinnaker claims that Nicholson, as director, recommended to the Springboard shareholders the $5.4 million purchase price for Springboard and asserts that Springboard's former shareholders will be damaged if they must now pay for Nicholson's shares more than what they received for their own.

■ Equitable estoppel is an affirmative defense which must be raised in the pleadings or litigated at trial by the consent of the parties. *Universal Lending Corp. v. Wirth Cos.*, 392 N.W.2d 322, 325 (Minn.App.1986). Generally, the failure to raise an issue before the trial court prevents this court from considering the issue on appeal. *In re Estate of Abesy*, 470 N.W.2d 713, 715 (Minn.App.1991). An appellate court may exercise its discretion to consider a theory on appeal if justice requires. *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 390 (Minn.1992) (citing Minn. R.Civ.App.P. 103.04). Justice does not require consideration of equitable estoppel here. Therefore, we refuse to consider this issue for the first time on appeal.

## III. Attorney Fees

Spinnaker also argues that the trial court erred in granting Nicholson attorney fees.

### A. Is Bad Faith Required?

■ Spinnaker claims that this court's decision in *MT Properties* requires a find-

---

**2.** The *BNE* court concluded, however, that the trial court on remand should value the shares at fair value based on the expert testimony already in evidence if, at the conclusion of the trial, the

court "is not persuaded by a preponderance of the evidence that the financial terms of the merger agreement should prevail." *BNE*, 588 N.E.2d at 21.

ing of bad faith before a trial court can award attorney fees under Minn.Stat. § 302A.473, subd. 8(b).

However, Minn.Stat. § 302A.473, subd. 8(b), provides:

> If the court finds that the corporation has *failed to comply substantially* with this section, the court may assess all fees and expenses of any experts or attorneys as the court deems equitable. These fees and expenses may also be assessed against a person who has acted arbitrarily, vexatiously, or not in good faith in bringing the proceeding, and may be awarded to a party injured by those actions.

(Emphasis added.) [3]

The trial court, thus, may award attorney fees for the corporation's *failure to comply substantially* with its obligations. *MT Properties* does not limit the trial court's discretion to award attorney fees to a case where the corporation has acted in bad faith.

### B. Finding of Failure to Comply Substantially

■ Spinnaker argues that under Minn. Stat. § 302A.473, subd. 8(b), the trial court erred by awarding attorney fees without finding that the corporation "failed to comply substantially with this section."

The trial court awarded Nicholson attorney fees after concluding that Spinnaker

> failed to comply with the requirements of Minn.Stat. § 302A.473 by paying [Nicholson] substantially less than the fair value of their Springboard stock holdings.

While the trial court did not use the express language of the statute by finding a "fail[ure] to comply substantially," implicit in its order is a finding that Spinnaker failed to comply substantially.

The facts support the trial court's conclusion. Spinnaker paid Nicholson $0.90 per

share for his common stock and $1.575 per share for his preferred stock. Ever since Springboard shares first traded publicly on NASDAQ, however, the market price never fell as low as $0.90. Nicholson's expert testified that the minimum fair value would be the lowest market price, approximately $1-⅝ per share. He could think of no reason for discounting the market price to $0.90 per share.

Given this testimony and the wide discrepancy between what Spinnaker paid Nicholson and the court's conclusion as to fair value, we hold that the trial court's award of attorney fees was proper.

### IV. Attorney Fees on Appeal

■ Nicholson contends that he is entitled to the attorney fees he incurred on appeal.

The Minnesota Supreme Court has held that the party who prevails at the trial court level and who is awarded statutory attorney fees may be entitled to recover attorney fees on appeal. *Bucko v. First Minn. Sav. Bank, F.B.S.*, 471 N.W.2d 95, 99 (Minn.1991). The supreme court reasoned that to hold otherwise would be contrary to the legislature's intent in providing for attorney fees by statute. *Id.*

Because we conclude that the trial court properly awarded attorney fees under Minn.Stat. § 302A.473, subd. 8(b), and because Nicholson is the prevailing party on appeal, we grant Nicholson's request for attorney fees on appeal in the amount of $2,000.

### DECISION

We hold that the trial court properly used its discretion in determining the fair value of Nicholson's common and preferred stock in Springboard and in awarding Nicholson attorney fees for Spinnaker's failure to comply with Minn.Stat. § 302A.473 (1990). We also grant Nicholson's request

---

**3.** The comment prepared by the reporter for the Advisory Task Force on Corporation Law, found at Minn.Stat.Ann. § 302A.473, subd. 8(b) (West 1981), further explains:

> [E]xpert fees and counsel fees may also be assessed under 8(b). No attempt has been made to define when a "corporation has failed to comply substantially with this section", as the failure may be merely a procedural omission, or *it may be the offering of an estimated fair value which substantially underestimates the actual fair value of the shares.* In either case, the discretion of the court, in light of the facts of each case, should control.

(Emphasis added.)

for attorney fees incurred in defending this appeal.

Affirmed.