**Terry POOLEY, Appellant,**

v.

**MANKATO IRON & METAL, INC., et al., Respondents.**

No. C8–93–1901.

Court of Appeals of Minnesota.

March 22, 1994.

Review Denied May 17, 1994.

Michael G. Singer, Minneapolis, for appellant.

Randall C. Berkland, Stephen P. Rolfsrud, Blethen, Gage & Krause, Mankato, for respondents.

Before FORSBERG, P.J., and CRIPPEN and AMUNDSON, JJ.

## OPINION

FORSBERG, Judge.

Appellant Terry Pooley sued Mankato Iron & Metal (Mankato) and respondents Gregory and Ronald Pooley for violating the Minnesota Business Corporation Act. *See* Minn.Stat. §§ 302A.001–302A.917. The trial court found that respondents, as directors of Mankato's board, unfairly prejudiced appellant by freezing him out of a business in which he reasonably expected to participate.

The trial court found that the value of appellant's shares was $630,000 and was not to be discounted due to the shares' minority status. It ordered respondents to buy out appellant's shares for this amount. The trial court further ordered that respondents pay interest on appellant's shares from the date of entry of judgment. Finally, the trial court ruled that Mankato was not required to reimburse appellant for his 1990 K–1 tax obligation. Appellant moved for a new trial but the trial court denied his motion. Appellant now seeks review of the trial court's denial. By notice of review, respondents seek review of the trial court's failure to reduce the value of appellant's shares by a minority discount. We affirm.

## FACTS

In 1979, appellant Terry Pooley and respondents Gregory and Ronald Pooley incorporated Mankato Iron & Metal. The parties each owned one-third of Mankato's stock. Mankato employed appellant to oversee the ferrous operation.

The parties had a difficult relationship. In the early 1980's, appellant pleaded guilty to assaulting someone in the scope of his employment. In 1989, appellant assaulted respondent Gregory Pooley. He also damaged a customer's truck. As a result, a jury convicted appellant of assault and criminal damage to property. Following this conviction, Mankato terminated appellant's employment.

On April 27, 1990, the parties held a special shareholder and directors meeting. Respondents voted out appellant as an officer and later removed him as a director.

Appellant sued Mankato for breach of an oral contract for lifetime employment. A jury found no such contract existed. Appellant later sued Mankato and respondents for breaching an implied employment contract with appellant and for violating the Minnesota Business Corporation Act by acting in an unfairly prejudicial manner toward appellant. *See* Minn.Stat. §§ 302A.001–302A.917. The trial court found appellant had no implied contract for lifetime employment with Mankato. The trial court, however, did conclude that respondents, as directors of Mankato's board, unfairly prejudiced appellant by freezing him out of a business in which he reasonably expected to participate. The trial court ordered respondents to buy out appellant's shares for their fair market value.

The trial court concluded April 27, 1990 was the equitable date for determining the fair value of appellant's shares in Mankato. On June 3, 1993, the trial court entered judgment finding that the value of appellant's shares was $630,000 and ordering they were not to be discounted for their minority status. The trial court further ordered that respondents pay interest on appellant's shares from the date of entry of judgment. Finally, the trial court ordered that Mankato was not required to reimburse appellant for his 1990 K–1 tax obligation.

Both appellant and respondents moved the trial court to amend the June 3 judgment. Moreover, appellant alternatively moved for a new trial. On August 18, 1993, the trial court denied these motions. Appellant and respondents now seek review.

## ISSUES

1. Did the trial court err by not requiring respondents to pay appellant interest beginning on April 27, 1990 on the shares they were ordered to buy from appellant?

2. Did the trial court err by not requiring Mankato to reimburse appellant for his 1990 K–1 tax obligation?

3. Did the trial court err by not reducing the fair value of appellant's shares by a minority discount?

## ANALYSIS

■ Appellant did not file a timely appeal from the June 3, 1993 judgment, but the August 18, 1993 order denying a new trial is separately appealable. This court will not disturb a trial court's denial of a motion for a new trial absent a clear abuse of discretion. *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 352 (Minn.1981).

1. The trial court concluded that respondents acted in a manner unfairly prejudicial toward appellant, and, pursuant to its equitable powers, ordered that they buy appellant's shares in Mankato under Minn.Stat. § 302A.751 (1988).

■ Minn.Stat. § 302A.751, subd. 2 provides for valuation in such sales:

> If the parties are unable to agree on fair value within 40 days of entry of the order, the court shall determine the fair value of the shares under the provisions of section 302A.473, subdivision 7, and may allow interest or costs as provided in section 302A.473, subdivisions 1 and 8.

*Id.* Pursuant to this provision, the trial court found the fair value of appellant's shares was $630,000. It further awarded appellant interest from the date of entry of its June 3, 1993 order. Appellant argues the trial court erred by not awarding him interest beginning on April 27, 1990, the date the trial court set as the valuation date of his shares. We believe the trial court properly calculated interest in accordance with its equitable powers.

Although the trial court ultimately ordered respondents to buy appellant's shares in June 1993, appellant first brought suit against respondents in May 1990 for breach of an oral employment contract. Two months later when appellant brought this action, he also alleged respondents breached an implied employment contract with appellant. Due to these contract claims, the trial court was delayed three years in disposing of the present action. The trial court could reasonably conclude it would have been unfair to respondents for the trial court to order them to pay interest during that time. We see no abuse of the trial court's discretion in making this determination. *See City of Cloquet v. Cloquet Sand & Gravel, Inc.*, 312 Minn. 277, 279, 251 N.W.2d 642, 644 (1977) (this court will not disturb a trial court's grant of equitable relief unless it finds the trial court abused its discretion).

2. During 1989, the parties agreed to build a recycling facility and forego their rights to wages beginning October 5, 1989, to finance the facility's construction. The parties also arranged to have Mankato taxed as a Subchapter S corporation as of October 1989. In 1990, due to this change in tax status, each party was required to report to the federal and state taxing authorities $170,000 in K–1 income. The parties did not receive all of this income due to their wage agreement, but each reported it as income on their individual tax returns.

Respondents received some 1990 income because they began drawing $3,200 every two weeks as of mid-August 1990. Appellant, in contrast, received no income during 1990 due to his termination. Thus, appellant paid $70,000 in income taxes from his personal funds. Appellant moved for reimbursement of this amount, arguing that equity dictates respondents indemnify appellant for the adverse tax consequences he suffered following his termination.

The trial court denied appellant's request. In its memorandum to its June 3, 1993 order, the trial court noted that, when respondents wanted to obtain a loan to enable the corporation to pay dividends for the 1990 tax year, appellant refused to sign a bank-required personal guarantee. The trial court seemed to reason that because appellant would have received funds from the corporation to pay his tax liability if he had agreed to sign for the loan, equity does not now demand the corporation reimburse him.

■ A court may fashion equitable remedies based on the exigencies and facts of each case so as to accomplish justice. *Clark*

*v. Clark*, 288 N.W.2d 1, 11 (Minn.1979). Because appellant refused to take available steps to receive funds from the corporation to cover payment for his tax liability, the trial court acted fairly by declining to order respondents to reimburse him for it. *See* Minn.Stat. § 302A.751, subd. 1 ("a court may grant any equitable relief it deems just and reasonable in the circumstances"). Thus, we conclude the trial court did not abuse its discretion and properly denied a new trial on this issue.

3. Pursuant to a notice of review, respondents argue the trial court erred by not reducing the value of appellant's shares by a minority discount. The trial court based its decision on two dissenter's rights cases that prohibit courts from applying minority discounts when valuing shares. *See MT Properties, Inc. v. CMC Real Estate Corp.*, 481 N.W.2d 383, 388 (Minn.App.1992); *Spinnaker Software Corp. v. Nicholson*, 495 N.W.2d 441, 445 (Minn.App.1993), *pet. for rev. denied* (Minn. Mar. 30, 1993). Respondents argue that because both parties' experts applied a minority discount when valuing appellant's shares and neither party contested the application of such a discount, the trial court erred. But the judge, as the trier of fact, need not accept a witness's opinion. *See State v. Poganski*, 257 N.W.2d 578, 581 (Minn.1977).

Respondents further reason that because this court in *Spinnaker* found *MT Properties* did not hold that the value of shares is always determined by the corporation's price, disregarding minority discounts defeats the statutory goal of valuation. They argue that by not applying the discount, each shareholder's shares are valued equally even though the minority shares may actually be worth less. But this court in *MT Properties* held minority discounts to be improper "because the legislature has enacted the statute with the evident aim to protect the dissenting shareholder." *MT Properties*, 481 N.W.2d at 388.

Finally, respondents argue that a balancing of the equities requires a discount be applied. They reason that appellant's criminal activities weigh against him receiving equal value for his shares. In spite of appellant's activities, the trial court found respondents' actions unfairly prejudiced appellant. As the trial court had already found that appellant merits the fair value of his shares, it did not have reason to later discount that value.

The trial court found that appellant was unfairly prejudiced by respondents' removal of him as a director and officer. The trial court ordered respondents to buy appellant's shares to remedy this wrong. We find this court's rationale in *MT Properties* and *Spinnaker* regarding the determination of "fair value" in dissenter's rights cases also applies to the determination of "fair value" in buy-out situations under Minn.Stat. § 302A.751. Therefore, because appellant is an unwilling vendor of his shares in Mankato we hold the trial court properly exercised its discretion in not reducing appellant's shares' value by a minority discount.

## DECISION

The trial court properly declined to reduce the fair value of appellant's shares by a minority discount. The award of interest on the shares as of the date it entered judgment was within the trial court's discretion. Furthermore, the trial court properly found that respondents were not liable for appellant's 1990 K–1 tax obligation.

**Affirmed.**