DECISION
Plaintiff-appellant, Thomas J. English, appeals from a judgment of the Franklin County Court of Common Pleas, valuing appellant's minority stock interest in defendant-appellee, Atromick International, Inc. ("Atromick"). Appellant argues that the trial court erred in valuing his stock at $361,532. Because some competent, credible evidence supports the trial court's decision and because the trial court appropriately discounted appellant's stock, we disagree. Because we find the trial court abused its discretion by failing to award interest to appellant, we agree.
Appellant was a long-time employee and executive vice-president of Atromick. He also owned 11.43 percent of the outstanding shares of stock in Atromick. Jerome Romick and his wife, Ina Sue Romick, jointly owned 87.14 percent, and Jerome's sister, Patricia Romick, owned the remaining 1.43 percent.
In 1995, Atromick began exploring the possibility of a sale of its corporate assets or a merger with another business entity. Atromick hired The Harmon Group Corporate Finance, Inc. ("Harmon") to appraise Atromick and seek out potential purchasers of the company. Harmon appraised Atromick at between $22.46 million and $30 million. Four potential purchasers submitted letters of interest ranging from $22.5 million for one hundred percent of Atromick's assets to $13 million for sixty-five percent of the equity. Mercury Capital, one of the four potential purchasers, began negotiations to purchase eighty percent of Atromick's assets for $18 million. With this arrangement, appellant would have received $1.8 million for his Atromick stock.
Although the Mercury Capital deal was set to close, a new investor, Marc Abramowitz, proposed to purchase Atromick's assets for a similar price, but his offer would have allowed Jerome Romick to purchase a significant portion of the surviving entity for a small investment. Abramowitz's letter of intent provided that appellant would receive his pro rata share of the purchase price, approximately $1.37 million, plus payment for a non-compete agreement and reimbursement for certain tax consequences. Accordingly to appellant, he would have received approximately $2.057 million under the Abramowitz deal.
Abramowitz additionally proposed that Atromick merge into a newly created company, Medicart Industries, Inc., in which appellant and Patricia Romick would not participate. Abramowitz then would purchase fifty-one percent of Medicart Industries, Inc. for $12.04 million.
In preparation for the deal with Abramowitz, Atromick merged with Atromick Merger Company. The merger's sole purpose was for the majority stockholders to purchase the minority stockholders' interests in Atromick. Appellant dissented from the vote to merge. In response, Atromick offered appellant approximately $1.16 million for his stock. Appellant refused this offer and eventually sought an R.C. 1701.85 judicial determination of the value of his stock.
At the court trial, appellant presented the expert testimony of Anthony Mollica. Mollica first determined the overall value of Atromick and then computed appellant's pro rata share of the company. Mollica concluded that appellant's stock was worth $2.4 million. Mollica did not apply either a minority or a marketability discount to his valuation.
Atromick presented the expert testimony of Dr. Stephen Buser. Buser determined the actual market value of Atromick at approximately $14 million. He determined that appellant's pro rata portion of Atromick was $1.2 million. Buser then applied a fifty percent minority discount and a forty percent marketability discount. He concluded that appellant's stock was worth $361,532.
The trial court concluded that a straight pro rata valuation of appellant's stock was inappropriate. Instead, the trial court applied the willing buyer-willing seller approach and determined that minority and marketability discounts were appropriate. The trial court found that Mollica's expert testimony was not helpful because he failed to apply either of these discounts. The trial court concluded that Buser applied the appropriate legal standard in his valuation and was credible. The trial court determined that appellant's stock was worth $361,532.
Appellant appeals, assigning the following errors:
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FINDING THAT THE "FAIR CASH VALUE" OF APPELLANT'S SHARES OF ATROMICK INTERNATIONAL, INC. WAS $361,532.00.
ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FAILED TO AWARD INTEREST AS MANDATED BY O.R.C. 1701.85.
In his first assignment of error, appellant argues that the trial court erred when it determined that the fair cash value of his stock was $361,532. Within this assignment of error, appellant asserts several arguments. He asserts that (1) the trial court should have relied on appellant's expert stock valuation instead of Buser's opinion, (2) Atromick's offer to buy his shares should serve as a minimum value for his shares, (3) minority discounts should not be applied to a freeze-out merger, and (4) marketability discounts should not be applied to freeze-out mergers.
The trial court's valuation of a dissenting shareholder's stock is a factual determination; therefore, we will not reverse the trial court's decision if some competent, credible evidence supports it. See The Hermitage Club Co. v. Powers (June 5, 1998), Hamilton App. No. C-970664, unreported; Garttman v. Picoma Indus., Inc. (Jan. 5, 1993), Belmont App. No. 92-B-5, unreported; Lockspeiser v. Seiler
(Jan. 7, 1987), Hamilton App. No. C-860199, unreported.
A shareholder who dissents from a merger has the right to seek payment of the "fair cash value" of his or her shares of the corporation. Armstrong v. Marathon Oil Company (1987),32 Ohio St.3d 397, paragraph one of the syllabus; R.C. 1701.85. The fair cash value is "the amount a willing seller, under no compulsion to sell, would be willing to accept, and a willing buyer, under no compulsion to purchase, would be willing to pay for a share of stock of the corporation to be merged." Id.
If there is an active market for the particular corporate stock and that market is sufficiently active in the trading of such stock, then the actual market price would satisfy the willing seller-willing buyer test of R.C. 1701.85. Id.,
paragraph two of the syllabus. However, when there is no active market or insufficient trading activities, "the trial court and the appraisers would have no market analysis of market activity to apply. Under such circumstances, they may well apply the so-called hypothetical market valuations to the dissenters' shares."Id., at 411. The hypothetical market valuation takes into account "all acceptable accounting principles, including asset value, capitalization of earnings, dividend returns, management, potential growth of corporate endeavor or product * * *." Id. This standard permits evidence of any factor that a reasonable person would take into consideration in determining value. Vought v.Republic-Franklin Ins. Co. (1962), 117 Ohio App.3d 389, 391.
The statute directs the trial court to value the shares held by the dissenting shareholders; thus, "[t]here is no reason to consider, nor is the dissenting shareholder entitled to receive, any of the premium value offered as consideration to those who in fact tendered their shares." Armstrong, supra, at 411-412.
Appellant argues that the trial court should have relied upon his expert's opinion on the fair cash value of his stock rather than Buser's expert opinion. He argues at length that Mollica's opinion is more persuasive than Buser's expert opinion. However, the weight to be given the evidence and the credibility of witnesses are ordinarily issues for the trier of fact rather than for a reviewing court. Huntington National Bank v. Wolfe
(1994), 99 Ohio App.3d 585, 601. Generally, we will not substitute our judgment on such matters for that of the trial court. Thus, we construe appellant's arguments as reasons why Buser's opinion is not competent or credible, and thus, reasons why Buser's opinion is not competent, credible evidence on which the trial court could have based its decision.
Appellant asserts that Buser's opinion is neither competent nor credible, because (1) Buser did not calculate the fair cash value, rather Buser calculated the fair market value of appellant's stock, (2) Buser did not consider the willing seller part of the "willing seller-willing buyer" test, (3) Buser applied minority and marketability discounts to his valuation of appellant's stock, and (4) Buser did not consider the overall fairness of his valuation.
While Buser may have used the term "fair market value" during his testimony, it is clear from the record that he employed the proper "willing seller-willing buyer" standard. The mere fact that Buser mislabeled the statutory test does not affect the competency or credibility of his opinion.
Appellant next complains that Buser did not consider that a willing seller would not sell appellant's stock for $361,532 because of the recent offers to purchase Atromick. These offers would have paid much more for appellant's stock as a pro rata share of the entire corporation. However, the Mercury Capital offer and Abramowitz offer were offers to buy a majority stake in Atromick, not just appellant's shares. Atromick's offer may have included a premium to avoid this very litigation. Thus, Buser's refusal to rely on these offers as indications of what a willing seller would accept does not affect the competence or credibility of his opinion.
Appellant also asserts that Buser's opinion was not competent or credible because, contrary to law, he applied a minority and marketability discount to his valuation of appellant's stock. For the reasons outlined in this decision, we find that the application of minority and marketability discounts did not affect the competency and credibility of Buser's opinion.
Finally, appellant asserts that Buser's opinion was not competent or credible because he did not consider the overall fairness of his valuation. He argues that R.C. 1701.85 directs the trial court to award a fair cash value, not just the cash value, of the stock. While appellant is correct in this regard, R.C.1701.85(C) defines "fair cash value" as "the amount that a willing seller * * * would be willing to accept and that a willing buyer * * * would be willing to pay." Thus, the willing seller-willing buyer test incorporates the concept of fairness. Thus, there is no overall fairness requirement in the willing seller-willing buyer test of R.C. 1701.85. Accordingly, Buser's failure to consider overall fairness in his valuation does not affect the competency or credibility of his opinion.
Some competent, credible evidence supports the trial court's valuation of appellant's stock. The trial court determined that Buser's expert opinion was credible and that the opinion of appellant's expert, Mollica, was not helpful because he did not apply a minority or marketability discount to his valuation of appellant's stock. Buser opined that appellant's stock had a fair cash value of $361,532. The trial court was free to find Buser's method of valuation and therefore his testimony more credible than that of appellant's witness. Accordingly, we reject appellant's assertion that the trial court should have relied upon his expert's opinion on the fair cash value of his stock rather than Buser's expert opinion and find that the trial court's valuation of appellant's stock is not against the manifest weight of the evidence.
Appellant next asserts that Atromick's offer to purchase only his shares should serve as a minimum value in the determination of their fair cash value because it is a binding admission against interest. While under Armstrong, the corporation's offer to purchase only appellant's stock may be relevant to the fair cash value, there is no authority that even suggests that such an offer is the minimum amount that a trial court may award under R.C. 1701.85. The corporation may have increased its offer to prevent the significant expense of litigating the fair cash value.
Furthermore, in order for an admission to be binding, the procedure outlined in Civ.R. 36 must be followed, including a formal request for an admission. See Civ.R. 36(C). No such request is reflected in the record before us. Accordingly, we reject appellant's argument that Atromick's offer to purchase only his stock should serve as an admission of the minimum value in the determination of their fair cash value.
Appellant next asserts that the trial court should not have applied a minority discount in determining the fair cash value of appellant's stock. He argues that minority discounts (1) are not provided for in R.C. 1701.85 or by Armstrong, and (2) are not appropriate in freeze-out mergers because, in enacting R.C.1701.85, the General Assembly intended to protect minority shareholders.
Appellant first argues that because both R.C. 1701.85
and Armstrong refer to "a share" of stock, the dissenting stockholder's shares must be determined on a pro rata basis. However, Armstrong explicitly provides that in certain circumstances, the pro rata share of a hypothetical purchase price of the entire corporation is "simply incorrect." Armstrong, at 411. Moreover, both R.C. 1701.85 and Armstrong provide that the test for determining the fair cash value is the willing seller-willing buyer test. We have previously determined that "any factor
which a reasonable [person] would take into consideration in determining value" is relevant to the fair cash value. Vought,supra, at 391. The fact that a stock is a minority interest is a factor that a reasonable person would consider in determining the value of the stock. Akron Standard Meats Foods Co. v. Calle
(Oct. 7, 1981), Summit App. No. 10130, unreported.
Next, we examine appellant's argument that applying a minority discount in a freeze-out merger goes against the public policy of protecting dissenting shareholders underlying R.C.1701.85. A minority stockholder in a corporation with a single majority stockholder, such as Atromick, is inherently at risk of being frozen-out either by a forced buy out or through the withholding of dividends or other corporate policy. To ignore this reality, as appellant urges, would be to artificially increase the value of shares for which there may be little value. See Garttman,supra, (ignoring marketability discount when valuing a dissenting shareholder's shares would artificially increase value of shares).
The cases that appellant cites in support of his public policy argument are distinguishable because they all are from foreign jurisdictions where statutory law provides that a dissenting shareholder is entitled to the "fair value" of his or her shares. The concept of "fair value" is far different from the "fair cash value" concept. See, e.g., MT Properties, Inc. v. CMCReal Estate Corp. (Minn.App. 1992), 481 N.W.2d 383, 387-388.
Accordingly, we find that the trial court did not err in applying a minority discount to appellant's shares.
Appellant finally asserts that the trial court should not have applied a marketability discount in valuing his Atromick stock. He argues that marketability discounts are inappropriate in dissenting shareholder appraisal actions where the shares are to be purchased by the majority shareholder.
Again, the cases cited by appellant are from foreign jurisdictions that use the "fair value" standard to value dissenting shareholder's stock. For the reasons previously stated in this decision, we decline to find that marketability discounts are either against public policy or are not relevant to valuing minority interest in freeze-out mergers. See Garttman, supra.
Because we find that some competent, credible evidence supports the trial court's valuation of appellant's Atromick stock, and because we find that the trial court used the appropriate legal standard in making its determination, we overrule appellant's first assignment of error.
In his second assignment of error, appellant argues that the trial court erred by failing to award him interest from the date of the merger. He asserts that an award of interest is mandatory, and that only the interest rate and the date from which the interest begins are discretionary.
R.C. 1701.85(B) provides in part:
 * * * The court thereupon shall make a finding as to the fair cash value of a share and shall render judgment against the corporation for the payment of it, with interest at such rate and from such date as the court considers equitable.
In Armstrong, the Ohio Supreme Court construed R.C. 1701.85(B) and held that "the trial court may, within its own discretion, determine an interest rate `which the court considers equitable.'"Armstrong, at 421.
In Vought, the trial court computed the interest only on the difference of the company's offer to purchase the stock and the trial court's valuation of the fair cash value of the stock. On appeal, we held that "[i]n view of the wording of the statute and the committee's comments, the trial court had discretion only as to the rate and the date. The basis for the computation of the interest is the total award." Id., at 391.
Thus, we review the trial court's decision as to the interest rate and the date from which the interest accrues for an abuse of discretion. Armstrong; Vought, supra. The term "abuse of discretion" connotes an unreasonable, arbitrary, or unconscionable decision. In re Election Contest of Democratic Primary ElectionHeld May 4, 1999 (2000), 88 Ohio St.3d 258, 266, citing State exrel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728,730.
The trial court made no mention of an award of interest in its decision. After appellant requested findings of fact and conclusions of law, the trial court ordered Atromick to submit proposed findings of fact and conclusions of law. Atromick filed proposed findings of fact and conclusions of law, which provided that "[t]he Court has considered the issue of interest pursuant to R.C. 1701.85(B) and has concluded that an award of interest is not appropriate in this case." Upon reviewing Atromick's proposed findings of fact and conclusions of law, the trial court adopted them. Thus, we find that the trial court considered whether to award interest to appellant. However, the trial court did not have discretion to decline to award interest. R.C. 1701.85(B) mandates that a trial court render judgment "with interest" at an equitable rate and from an equitable date. Because the trial court erroneously determined that an award of interest was not appropriate, it was unable to exercise its discretion to determine the equitable rate and date. Therefore, we sustain appellant's second assignment of error and remand this case to the trial court so that the trial court may make an award of interest pursuant to R.C. 1701.85(B), that, in its discretion, is equitable.
Having overruled appellant's first assignment of error and sustained his second assignment of error, we affirm the judgment of the trial court in part and reverse in part, and remand the case to the trial court for a determination of the equitable interest rate and date.
KENNEDY, J., and BOWMAN, P.J., concur.
KLINE, J., of the Fourth Appellate District, assigned under authority of Section 6(C), Article IV, Ohio Constitution.