No. 82,909

KATHERINE B. ARNAUD, ANNE M. ARNAUD, DONALD M. ARNAUD, JR., and CLAY BERRYMAN ARNAUD, *Plaintiffs*, v. STOCKGROWERS STATE BANK OF ASHLAND, KANSAS, and STOCKGROWERS BANC CORP., *Defendants*.

(992 P.2d 216)

Opinion filed November 5, 1999.

*James D. Oliver*, of Foulston & Siefkin L.L.P., of Topeka, argued the cause, and *Benjamin C. Langel* and *Jay F. Fowler*, of the same firm, of Wichita, were with him on the briefs for the plaintiffs.

*Max Eugene Estes*, of Max Eugene Estes, P.A., of Dodge City, argued the cause, and *Michael G. Quinn*, of Wichita, was with him on the brief for the defendants.

*Charles N. Henson*, of Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, of Topeka, was on the brief for *amicus curiae* The Kansas Bankers Association.

The opinion of the court was delivered by

ABBOTT, J.: This case is before the court on a question certified by the United States District Court for the District of Kansas pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.*

The plaintiffs were minority shareholders in the Stockgrowers State Bank of Ashland, Kansas (Bank). The majority shareholders formed the Stockgrowers Banc Corp., a holding company, and when the plaintiffs refused to transfer their bank stock to the holding company, the Bank initiated a reverse stock split (1 for 400). The reverse stock split reduced the Bank's outstanding shares from 4,000 to 10. The purpose of the reverse stock split was to leave the plaintiffs with a fractional share and eliminate them as shareholders by invoking K.S.A. 17-6405.

K.S.A. 17-6405 authorizes, among other things, a corporation to refuse to issue fractional shares and "pay in cash the fair value of fractions of a share as of the time when those entitled to receive such fractions are determined." The defendants determined what they claimed was the fair value of plaintiffs' stock based on the average of two appraisals they commissioned. The defendants, in order to arrive at a "fair value," employed appraisers who started with a valuation, which they then reduced by a "minority" discount and then further reduced for a "marketability" discount. The plaintiffs objected to the valuations and brought this action in the United States District Court.

The Honorable Monti L. Belot, on his own motion, certified the following question to this court for determination:

"Is it proper for a corporation to determine the 'fair value' of a fractional share pursuant to K.S.A. § 17-6405 by applying minority and marketability discounts when the fractional share resulted from a reverse stock split intended to eliminate the minority shareholder's interest in the corporation?"

The Bank's board of directors employed two appraisal firms to determine fair value. One firm determined the fair market minority value of each prereverse stock split share as $2,175. It then reduced the value by a 35% marketability factor, arriving at a "fair value" of $1,414 per prereverse stock split share. The second firm ap-

praised the fair market value of each prereverse stock split share at approximately $2,562.61. It then reduced the market value by a minority discount of 23.1% and a marketability discount of 25%, arriving at a "fair value" of $1,330 per prereverse stock split share. It appears the Bank's board of directors then averaged the two appraisals and paid $1.50 more than the average ($1,372).

A minority discount allows an appraiser to adjust for a lack of control over the corporation on the theory that the minority shares of stock are not worth the same as the majority holdings due to the lack of voting power. A marketability discount, on the other hand, allows an appraiser to adjust for a lack of liquidity in the stock itself on the theory that there is a limited supply of purchasers of that stock. See Hood et al., *Valuation of Closely Held Business Interests*, 65 UMKC L. Rev. 399, 438 (1997).

This court has previously approved the procedure that the defendants have used to force the buy out of the plaintiffs' minority share holdings. See *Achey v. Linn County Bank*, 261 Kan. 669, 931 P.2d 16 (1997) (allowing the corporation to initiate a reverse stock split and force the buy-out of the minority shareholders' stock in order to prevent any fractional share holdings). We did not, however, discuss whether minority or marketability discounts should be applied in determining the "fair value" that was to be paid to the minority shareholders. 261 Kan. at 682.

There is no Kansas case law which interprets the meaning of "fair value" as set forth in K.S.A. 17-6405. Kansas courts have a long history, however, of looking to the decisions of the Delaware courts involving corporation law, as the Kansas Corporation Code was modeled after the Delaware Code. See *Achey*, 261 Kan. at 676 (the decisions of the Delaware courts involving corporation law are persuasive); *In re Hesston Corp.*, 254 Kan. 941, 980, 870 P.2d 17 (1994) (the Kansas provisions of the Corporation Code are "nearly identical" to the Delaware model); *Norton v. National Research Foundation*, 141 F.R.D. 510, 513 (D. Kan. 1992) (Kansas courts often look to Delaware case law for guidance regarding the Kansas Corporation Code); and *Vogel v. Missouri Valley Steel, Inc.*, 229 Kan. 492, 496, 625 P.2d 1123 (1981) (the Kansas Corporation Code was patterned after the Delaware Corporation Code and the de-

cisions of the Delaware courts are considered persuasive). K.S.A. 17-6405 is based on a similar Delaware statute. See Del. Code Ann. tit. 8, § 155 (1991). Unfortunately, there are no Delaware cases which have discussed the meaning of "fair value" under Del. Code Ann tit. 8, § 155. The meaning of "fair value" has, however, been evaluated in other actions.

Although the Kansas Court of Appeals has dealt with the issue of "minority discounts" in a limited context, the question of whether a minority or marketability discount should be applied to these particular facts is a question of first impression.

Cases and commentators suggest that the majority of states have not applied minority and marketability discounts when determining the fair value of stock in similar cases. See *Lawson Mardon Wheaton Inc. v. Smith*, 160 N.J. 383, 401, 734 A.2d 738 (1999) (the majority of jurisdictions has held that shares should not be discounted and that the shareholder is entitled to his proportionate share of the fair market value of the corporation); *Charland v. Country View Golf Club, Inc.*, 588 A.2d 609, 611 (R.I. 1991) (most courts have held that no minority discount should be applied when a corporation is buying back the stock owned by its minority shareholders); Wertheimer, *The Shareholders' Appraisal Remedy and How Courts Determine Fair Value*, 47 Duke L.J. 613, 641-42 (1998) (a majority of courts have disallowed a minority discount); and Oitzinger, *Fair Price and Fair Play Under the Montana Business Corporation Act*, 58 Mont. L. Rev. 407, 420-21 (1997) (a majority of courts have held that minority discounts should not be applied where the minority shareholder is selling his shares to the corporation).

The leading case in this area is *Cavalier Oil Corp. v. Harnett*, 564 A.2d 1137 (Del. 1989). Although *Cavalier* deals with a forced buy-out of a shareholder who objected to a merger and asserted appraisal rights pursuant to a statute similar to K.S.A. 17-6712, the policy rationale is sound and the holding persuasive. In *Cavalier*, the minority shareholder asserted appraisal rights following a short form merger pursuant to Del. Code.Ann. tit. 8, § 253. The Court of Chancery of Delaware entered judgment fixing the value of the minority-owned stock at $347,000. The Court of Chancery did not

apply either a minority discount or a marketability discount in determining the value of the minority owned stock. The Delaware Supreme Court affirmed and noted:

"Discounting individual share holdings injects into the appraisal process speculation on the various factors which may dictate the marketability of minority share holdings. More important, to fail to accord to a minority shareholder the full proportionate value of his shares imposes a penalty for lack of control, and unfairly enriches the majority shareholders who may reap a windfall from the appraisal process by cashing out a dissenting shareholder, a clearly undesirable result." 564 A.2d at 1145.

The *Cavalier* court further noted that in performing an appraisal, the company should be viewed as a "going concern." 564 A.2d at 1145. The rationale set forth in *Cavalier* is sound.

Other courts have similarly held. See *Brown v. Allied Corrugated Box Co.*, 91 Cal. App. 3d 477, 486, 154 Cal. Rptr. 170 (1979) (holding that minority discounts should not have been applied and noting that minority discounts have "little validity" when the purchaser is someone who is already in control of the corporation); *Security State Bank v. Ziegeldorf*, 554 N.W.2d 884, 889-90 (Iowa 1996) (disallowing a marketability discount and holding that a marketability or minority discount would prevent a minority shareholder from receiving the fair value of their pro rata share); *Richardson v. Palmer Broadcasting Co.*, 353 N.W.2d 374, 379 (Iowa 1984) (holding that the application of a minority discount is "contrary to the spirit of 'fair value' determinations"); *Rigel Corp. v. Cutchall*, 245 Nebr. 118, 130, 511 N.W.2d 519 (1994) (citing *Cavalier* and holding that neither a minority discount nor a marketability discount should be given in an action for appraisal of the dissenting shareholder's interests); *Lawson*, 160 N.J. at 402 (following the majority rule as set forth in *Cavalier* and holding that marketability discounts should not be applied); *Fisher v. Fisher*, 568 N.W.2d 728, 732 (N.D. 1997) (following *Cavalier* and holding that minority discounts should not be considered in valuing the minority shareholder's interests); *In re McLoon Oil Co.*, 565 A.2d 997, 1005 (Me. 1989) (citing *Cavalier* and holding that minority discounts and marketability discounts should not be applied as they would be bound to encourage "corporate squeezeouts"); *MT Prop-*

*erties v. CMC Real Estate Corp.*, 481 N.W.2d 383, 387-88 (Minn. App. 1992) (following the reasoning of *Cavalier* and holding that a minority discount is inappropriate as it penalizes the minority shareholder while allowing the corporation to purchase the minority interest "cheaply"); *Hansen v. 75 Ranch Co.*, 288 Mont. 310, 957 P.2d 32, 41-42 (1998) (finding the majority rationale "compelling"); *Woolf v. Universal Fidelity Life Ins.*, 849 P.2d 1093, 1095 (Okla. App. 1992) (decisions of the Delaware courts are "very persuasive" and holding that the trial court erred when it applied a minority discount); *Charland*, 588 A.2d at 612-13 (R.I.) (holding that the minority and marketability discounts should not be applied when a corporation is purchasing the stock from its minority shareholders); and *HMO-W Inc. v. SSM Health Care System*, 228 Wis. 2d 815, 598 N.W.2d 577, 582-83 (Wis. App. 1999) (following *Cavalier* and holding that minority discounts are not appropriate when determining the value of minority shares in an appraisal action).

The American Law Institute has come to a similar conclusion. Section 7.22, Standards for Determining Fair Value, states:

"(a) The fair value of shares under § 7.21 (Corporate Transactions Giving Rise to Appraisal Rights) should be the value of the [holders] proportionate interest in the corporation, without any discount for minority status or, absent extraordinary circumstances, lack of marketability." A.L.I., *Principles of Corporate Governance*, § 7.22, pp. 314-15.

A handful of courts have held, however, that minority and marketability discounts should be applied. All but one of these decisions precede the 1989 Delaware Supreme Court decision in *Cavalier*. See *Hernando Bank v. Huff*, 609 F. Supp. 1124, 1126 (N.D. Miss. 1985) (holding that a minority discount should be applied when determining the value of the minority shareholder's interests); *Perlman v. Permonite Mfg. Co.*, 568 F. Supp. 222, 231-32 (N.D. Ind. 1983) (allowing a trial court expert witness to apply minority and marketability discounts); *Atlantic States Construction v. Beavers*, 169 Ga. App. 584, 589-90, 314 S.E.2d 245 (1984) (holding that it is not against public policy to apply a minority or marketability discount but that it should be done with "caution"); *Stanton v. Republic Bank*, 144 Ill. 2d 472, 480, 581 N.E.2d 678 (1991) (holding that the trial court did not abuse its discretion when it

applied a minority and marketability discount); *King v. F.T.J., Inc.*, 765 S.W.2d 301, 306 (Mo. App. 1988) (holding that it was appropriate for the trial court to apply a 7% minority discount); and *McCauley v. Tom McCauley & Son, Inc.*, 104 N.M. 523, 535, 724 P.2d 232 (Ct. App. 1986) (holding that the trial court properly exercised its discretion when it applied a minority discount of 25%).

In *Hansen*, the Montana Supreme Court set forth the rationale for refusing to apply minority or marketability discounts when the purchaser is the corporation:

"Applying a discount is inappropriate when the shareholder is selling her shares to a majority shareholder or to the corporation. The sale differs from a sale to a third party and, thus, different interests must be recognized. When selling to a third party, the value of the shares is either the same as or less than it was in the hands of the transferor because the third party gains no right to control or manage the corporation. However, a sale to a majority shareholder or to the corporation simply consolidates or increases the interests of those already in control. Therefore, requiring the application of a minority discount when selling to an 'insider' would result in a windfall to the transferee. This is particularly true since the transferring shareholder would expect that the shares would have at least the same value in her hands as in the hands of the transferee." 288 Mont. at 325.

Indeed, in the present case, the defendants also stand to reap substantial tax benefits pursuant to IRC § 1361(b) (3) (B) (i) (S corporation must hold 100% of the stock of the "qualified subchapter S subsidiary").

To allow a discount under the facts of this case would discourage investments in corporations by persons who would acquire a minority interest because it would enable the majority shareholders to seize the minority shareholders' interest in the corporation to the extent a minority or marketability discount is allowed. Investments should be encouraged, not discouraged.

We hold that minority and marketability discounts are not appropriate when the purchaser of the stock is either the majority shareholder or the corporation itself.

The defendants have noted that one previous Kansas decision holds that minority discounts should be applied in an action for appraisal. *Moore v. New Ammest, Inc.*, 6 Kan. App. 2d 461, 475,

630 P.2d 167 (1981). To the extent that the opinion in *Moore* is inconsistent with the present opinion, it is hereby overruled.

In answering the certified question before us, we hold that minority and marketability discounts should not be applied when the fractional share resulted from a reverse stock split intended to eliminate a minority shareholder's interest in the corporation.