# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01474-SCT

*RICHTON BANK & TRUST COMPANY*

*v.*

*ELIZABETH O. BOWEN AND EVELYN B. BOWEN*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/2000 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | PERRY COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT | H. MITCHELL COWAN |
| | E.CLIFTON HODGE, JR. |
| ATTORNEYS FOR APPELLEES: | ALAN W. PERRY |
| | ERIK M. LOWERY |
| | ROBERT CHESTER HUTCHISON |
| | PHILLIP SAMUEL SYKES |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/31/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/21/2001; amended 10/24/2002 |

### BEFORE McRAE, P.J., AND COBB AND DIAZ, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. On February 4, 1999, Richton Bank and Trust Company ("Bank"), pursuant to Miss. Code Ann. § 79-4-11.03 (2001), proposed a Plan of Share Exchange with Centon Bancorp, Inc. ("Holding Company"). The purpose of this exchange, among other reasons, was to form a holding company wherein the Bank could open itself up to more investment opportunities. Under this Plan, each Bank shareholder would receive one share of Holding Company stock in exchange for one share of Bank stock. On February 18, 1999 the Bank held a shareholder's meeting to seek approval of the share exchange. The Plan triggered a dissenter's rights provision under Miss. Code Ann. §§ 79-4-13.01 et seq. (2001) Under that provision, a shareholder may dissent from a proposed corporate action and require the corporation to purchase the shareholder's interest in the corporation for "fair value." *Id.* § 79-4-13.28(a). Two minority shareholders, Elizabeth O. and Evelyn B. Bowen (the "Bowens"), opposed the formation of the Holding Company and exercised their dissenter's rights under Miss. Code Ann. § 79-4-13.

¶2. Pursuant to Miss. Code Ann. § 79-4-13.02, the Bank retained a bank appraisal firm, Southard Financial, to determine the fair value of the Bowens' shares. On a non-marketable, minority interest basis, the firm found the Bowens' stock to be worth $1,357.00 per share. The Bowens accepted the $1,357.00 per share as partial payment for their stock, but made a demand for $2,800.00 per share. Pursuant to Miss. Code Ann. § 79-4-13.30, Richton Bank filed an action in the Chancery Court of Perry County on October 21, 1999, to resolve the valuation dispute.

¶3. At trial, the bank submitted a fair value appraisal (prepared by the Bank's expert, David Harris) of $1,809.00 per share on a marketable, minority interest basis and $1,357.00 per share on a non-marketable, minority interest basis. The Bowens submitted an appraisal (prepared by the Bowens' expert, Richard Place) with a fair value of $2,300.00 per share and, on the afternoon before trial, amended that appraisal to a fair value of $2,700.00 per share. This amendment of the value by the Bowens, according to the record, was unavoidable and excusable, and not of any real relevance. The Bowens valued a controlling interest in the Bank without minority or marketability discounts. And, as previously stated, the Bank valued its lower price per share on a non-marketable, minority interest basis.

¶4. The chancellor issued his Memorandum Opinion on July 3, 2000. He ruled that neither marketability nor minority discounts are permitted under Mississippi law when determining the fair value of a dissenting shareholder's stock. The chancellor found that the Bowens were compelled to sell their stocks because the Bowens would remain minority shareholders in "a significantly different entity." He concluded that the "proper construction of the statutory language excludes the application of discounts for lack of marketability as well as for minority status."

¶5. The chancellor rejected the appraisal of the Bowens' expert as "somewhat imprecise" and utilized the Bank's expert appraisal, eliminating the Bank's fundamental and marketability discounts as arbitrary and unwarranted. After eliminating the discounts, the chancellor assessed the fair value of the Bowens' stock at $2,726.55 per share. A final judgment was entered in favor of the Bowens and against the Bank on July 31, 2000. The chancellor ordered Richton Bank to pay the Bowens the difference between the $1,357.00 per share the Bank previously paid for the stock and the value assessed by the court. The court awarded $552,539.46 to Evelyn Bowen for her 403.446 shares and $175,277.74 to Elizabeth Bowen for her 127.982 shares. The court also ordered the payment of interest to the Bowens at 8% per annum. The Bank filed a notice of appeal to this Court on August 29, 2000.

## FACTS

¶6. Richton Bank is a small community bank in rural Perry County, Mississippi. Prior to the Bank's purchase of the Bowens' shares, Alison Granberry, the Chief Executive Officer ("CEO") and Chariman of the Board of Directors of the Bank, and her two children owned 52% of the Bank stock. The Granberrys have owned a controlling interest in the Bank since the early 1940's. The other Directors and their positions at the Bank are as follows: Ben McIlwain, president; Ken McCaskill, Chief Operating Officer; Bill Granberry, Senior Vice-President; and Billy Bowen, a member of the loan and audit committees. Billy Bowen is the son of Evelyn Bowen, and Evelyn is the sister of Elizabeth Bowen. Ken McCaskill is the son-in-law of former Richton Bank President, O. B. Bowen, Jr. Evelyn Bowen and Elizabeth Bowen do not hold managing positions and do not sit on the Board of Directors. As minority shareholders, they owned about 13% of the outstanding stock in Richton Bank.

¶7. Most of the minority shareholders, approximately 35, are Perry and Greene County residents. In 1999, the Bank had total assets of approximately $57 million, including deposits. The Bank has two branches, the main branch in Richton and another branch in Runnelstown, Mississippi. The Bank is operated by 24 full-time and 6 part-time employees. The Bank states that Perry County is a rural area that is heavily dependent on the timber industry as its economic base. Perry County has one of the lowest per capita incomes of all the Mississippi counties. Because of the poor economic conditions in Perry County, the Bank argues that there is limited potential for the Bank's market area. However, the Bank concedes that it has been

consistently profitable with strong deposit growth rates and strong returns on its assets. The Bank attributes its success to good management. The Bowens point out that the market growth in Richton and Perry County has accelerated, opening up more market potential for the Bank. They also point out that the Bank has no local competition, as Richton Bank is the only full-service bank in town.

¶8. Richton Bank offered testimony at the trial of this matter that there have only been four trades in the Richton Bank stock during the last 20 years. In 1984, Ben McIlwain purchased 10 shares and Senton Granberry purchased 23.64 shares at a price of $1,000.00 per share. In 1994, Evelyn Bowen purchased 129 shares from her son, Ben Bowen, for $1,150.00 per share. Billy Bowen purchased 129 shares from Bob Bowen at the same time for the same price. The book value of Richton Bank at that time was $1,305.00 per share. Allison Granberry has never had any offers to purchase her controlling share, and there have not been any offers to purchase the Bank in at least 29 years. Neither Granberry nor the Bank's board have any plans to sell the Bank.

¶9. On February 4, 1999, the Bank took steps to form a bank holding company through a Plan of Share Exchange with Centon Bancorp, Inc. The plan consisted of a share-for-share exchange so that all shares would exist in the Holding Company. On February 18, 1999, the Bank held a shareholder's meeting to approve the transaction. The Bowens elected to receive the fair value of their Bank stock instead of receiving an equal number of shares in the Holding Company. The Bowens and the Bank were unable to agree on a fair value and therefore sought a judicial determination of the fair value of the stock.

¶10. The Bank now requests that this Court reverse and remand with instructions to the chancery court to enter a judgment that the fair value of the Bowens' stock is $1,357.00 on a non-marketable, minority interest basis or to remand with instructions to reassess the fair value of the stock with the discounts.

## LEGAL ANALYSIS

¶11. Dissenter's rights statutes were originally designed to provide a remedy to shareholders so that they are not forced to invest in an enterprise which no longer mirrors the original investment made by the dissenting shareholder. *See* Barry M. Wertheimer, *The Shareholder's Appraisal Remedy and How Courts Determine Fair Value*, 47 Duke L.J. 613 (1998). The remedy provides the shareholders a way to "bail out" on "involuntarily altered" investments. *Id.* Our Legislature has enacted Miss. Code Ann. § 79-4-13.0 to provide appraisal rights for shareholders and to entitle the shareholder to obtain payment for the fair value of his shares.

¶12. On a preliminary note, and as the Bank points out in its reply brief, the Mississippi Legislature has recently amended the dissenter's rights statute by adding limitations on the transactions that trigger the dissenter's rights. Of particular interest, the 2001 amendment to § 79-4-13.02 adds:

> (b) Notwithstanding subsection (a), the availability of appraisal rights under subsection (a)(1), (2), (3) and (4) shall be limited in accordance with the following provisions:
> (1) <<+Appraisal rights shall not be available to any shareholder of the constituent corporations in a corporate reorganization transaction otherwise covered by Section 79-4-13.02(a)(1) or (2) if: (i) the shareholders of an existing corporation exchange shares of such corporation for shares of a newly formed corporation and receive, after the reorganization, the same proportionate share interest in the new corporation and the rights and interests of the shareholders in the newly formed corporation are substantially the same as those in the existing corporation prior to the transaction; (ii) the newly

formed corporation has no significant assets other than the shares of the existing corporation; (iii) after the reorganization the newly formed corporation and its subsidiaries have substantially the same assets and liabilities, on a consolidated basis, as those of the existing corporation prior to the transaction; (iv) fractional shares are neither created nor eliminated as a result of the transaction; (v) the existing corporation and the newly formed corporation are the only constituent corporations to such reorganization; (vi) the existing corporation and the newly formed corporation are corporations of this state; (vii) the directors of the existing corporation become the directors of the newly formed corporation upon the effective time of the corporate reorganization; (viii) the existing corporation becomes a direct wholly-owned subsidiary of the newly formed corporation; and (ix) the shareholders of the existing corporation do not recognize gain or loss for United States federal income tax purposes as determined by the board of directors of the existing corporation.+>>

Although the Bank does not argue and did not raise this issue at trial or before this Court, the Bank would now have this Court believe that it has met all these points and therefore the appraisal rights would not have triggered had this amendment been in effect at the time of the transaction. The Bank argues in its reply brief that this amended section would have applied because the share exchange did not affect any of the points mentioned in the amendment. The Holding Company now owns 100% of the of the Richton Bank stock. It argues that the loans, deposits, officers, employees, physical structures, assets, liabilities, customers, and by-laws are all the same. On the other hand, the Bowens point out that the transaction affects many of the rights of the minority shareholders. The Bowens also state that the new entity could participate and invest in other businesses which are not available to banks. The Bowens argued that they were satisfied with their long-term investment in a community bank but were opposed to a holding company which could engage in riskier business. The trial judge believed that the Holding Company was a significantly different entity. However, this issue was not fully considered at trial since the Bank has admitted that forming a holding company would entitle its shareholders to exercise dissenter's rights of appraisal. The Bank also admits in its reply brief before this Court that the Bowens exercised their rights under the law that existed in 1999 and are entitled to the fair value of their shares.

¶13. The Bank also argues that the trial court's findings that the Holding Company was a "significantly different entity" from Richton Bank and that the Bowens sold their shares "under compulsion" are manifest error. The Bank argues that the section of the 2001 amendment, quoted above, recognizes that the formation of a Holding Company is not a significant or oppressive corporate change. It believes that the elements of compulsion and oppression are the basis of the policy behind the dissenter's rights statute, and since those elements did not exist in this case, the statute should not have applied. We cannot effectively analyze these questions since there was little evidence presented on these issues. In fact, the issue was not given any significant treatment because the Bank, as stated above, admitted that forming the holding company would entitle its shareholders to exercise their right of appraisal.

¶14. Having discussed these preliminary issues, the central issue that the Bank raises is whether the chancellor erred in his assessment of the fair value by eliminating the discounts for non-marketability and minority shareholder status. *Cal-Maine Foods, Inc. v. Duvic*, 264 So. 2d 383 (Miss. 1972) is the only case that has come before this Court that has reached the issue of determining "fair value" in a dissenter's rights action. This Court held that the factors to be considered in determining "fair value" were within the discretion of the chancellor. Furthermore, it is "peculiarly within the province of the chancellor, as the trier of facts, to evaluate the evidence, resolve conflicts and to draw reasonable inferences with it." *Id.* The chancellor's determination of "fair value" is a question of fact. This Court will not disturb the chancellor's

findings of fact unless there is manifest error. ***Thomas Truck Lease, Inc. v. Lee County ex rel. Mitchell,*** 768 So. 2d 870 (Miss. 1999). Regarding the question of whether the chancellor erred in interpreting the statute as a matter of law, this Court's standard of review is de novo. ***Depriest v. Barber,*** 2001 WL 302117 (Miss. 2001).

¶15. ***Hernando Bank v. Huff***, 609 F. Supp. 1124 (N.D. Miss. 1985), *aff'd* 796 F.2d 803 (5th Cir. 1986), is the only other case in Mississippi that discusses the issue of fair value and the application of "minority discounts." That case involved minority shareholders of a bank dissenting from a merger. ***Hernando Bank v. Huff*** did not speak on the issue of "marketability" discounts nor did it apply any "marketability" discounts. However, that court did state that a minority discount was proper in the particular case before that court. ***Id.*** The Bowens argue that the courts use of the minority discount was merely discretionary and that the court's ruling did not require the use of minority discounts in all cases. We agree.

¶16. Since no other Mississippi cases have spoken on the issue, the Bowens gladly point to the current trend in the laws of other states for the disallowance of minority and marketability discounts. *See* ***Pueblo Bancorporation v. Lindoe, Inc.***, 2001 WL 921190 (Colo. App. 2001); ***Cavalier Oil Corp. v. Harnett***, 564 A.2d 1137 (Del. 1989); ***Arnaud v. Stockgrowers State Bank***, 992 P.2d 216 (Kan. 1999); ***Hansen v. 75 Ranch Co.***, 957 P.2d 32 (Mont. 1998); ***HMO-W Inc. v. SSM Health Care Sys.***, 611 N.W.2d 250 (Wis. 2000). This trend has culminated in the year 2000 amendment to Miss. Code Ann. § 79-4-13.04 in which the Legislature clarified the definition of "fair value" in dissenter's rights cases by eliminating discounts for lack of marketability and minority status. The chancellor's decision is consistent with the amendment's clarified definition of "fair value." Whether the chancellor applied the 2000 amendment retroactively or interpreted the old law guided by principles of fairness and equity is without consequence in this case. Regardless of the 2000 amendment, the chancellor was left to utilize his own discretion in the interpretation of fair value as it existed under the facts before him and under the then existing statute. Based upon a reading of the record, the chancellor's assessment of the "fair value" could not be considered manifest error and we find ample support in the record for the chancellor's determination of "fair value."

¶17. "Fair value" as the statute read in 1999 meant the following:

> (3) "Fair value", with respect to a dissenter's shares, means the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable.

Miss. Code Ann. § 79-4-13.01. In this case, the chancellor had the opportunity to assess two appraisal values. He chose the appraisal value that he believed most accurately reflected the "fair value" of the Bowens' stock. Also, based upon the totality of his analysis of the evidence, the growing trend in the law, and of the arguments of the parties, the chancellor based his valuation on the stock as a "whole entity, a going concern" without applying discounts for minority status or lack of marketability. Since the chancellor had broad discretion in determining "fair value" under the statute, we find no error in his interpretation of the term as it existed under Miss. Code Ann. § 79-4-13.01. The chancellor had the discretion under the then existing statute to eliminate marketability and minority discounts.

¶18. The following discussion in ***Pueblo Bancorporation v. Lindoe, Inc.***, 2001 WL 921190, at *3 (Colo. Ct. App. 2001) provides a helpful listing of some of the reasons why minority discounts are treated with disfavor:

[T]he application of a minority discount (1) deprives minority shareholders of their proportionate interest in a going concern; (2) values minority shares below majority shares, resulting in unequal treatment of the same class of shares; (3) undermines the primary goal of the dissenters' rights statute, i.e., preventing minority shareholders from being forced to sell at unfairly low values while allowing the majority to proceed as it desires; and (4) encourages oppressive conduct by the majority.

These reasons are merely academic for any present purposes, since our current statute eliminates the minority discounts. However, the reasons enumerated above lend support to the chancellor's decision in not applying a minority discount and give a greater understanding of the purposes in not allowing this discount.

¶19. Many jurisdictions have taken a blanket approach in refusing to allow the application of minority or marketability discounts. The leading case out of Delaware states, "to fail to accord to a minority shareholder the full proportionate value of his shares imposes a penalty for lack of control, and unfairly enriches the majority shareholders who may reap a windfall from the appraisal process by cashing out a dissenting shareholder, a clearly undesirable result." *Pueblo Bancorporation v. Lindoe, Inc,* 2001 WL 921190, at *5 (Colo. Ct. App. 2001) (quoting *Cavalier Oil Corp. v. Harnett,* 564 A.2d 1137, 1145 (Del.1989)). The American Law Institute also takes the position that in an appraisal action, "[t]he fair value of shares should be the value of the eligible holder's proportionate interest in the corporation, without any discount for minority status or, absent extraordinary circumstances, lack of marketability." *Id.* (quoting A.L.I., Principles of Corporate Governance § 7.22 (1994)). Several jurisdictions have found that no discounts should apply in a dissenting shareholder's appraisal action. *Id.* On the other hand, other jurisdictions have allowed or at least have afforded the trial court considerable discretion in utilizing marketability discounts when appropriate under a given set of facts. *Id.* In this case we will not disturb the chancellor's determination that marketability or minority discounts should not apply.

## CONCLUSION

¶20. We find that the chancellor observed sound discretion in his analysis of the evidence before him in determining the fair value of the Bowens' stock and that his decision should not be disturbed. Furthermore, the chancellor's interpretation of "fair value" as it existed in 1999 under Mississippi's dissenter's rights statute was well-founded and appropriate. Therefore, the judgment of the Perry County Chancery Court is affirmed.

¶21. **AFFIRMED.**

**PITTMAN, C.J., McRAE, P.J., SMITH, MILLS, WALLER, COBB AND EASLEY, JJ., CONCUR. BANKS, P.J., NOT PARTICIPATING.**