# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01121-SCT

*RAY T. WADE*

*v.*

*RICHARD A. SELBY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/97 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | BOBBY D. ROBINSON |
| ATTORNEY FOR APPELLEE: | DAVID M. SESSUMS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND RENDERED IN PART- 11/19/1998 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/10/98 |

**BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE FACTS AND CASE

¶1. In 1990, Eddy Sorey, aka C.E. Sorey II, ("Sorey") an attorney in Vicksburg, and his friend Richard A. Selby ("Selby") developed a common interest in acquiring properties located close to potential gaming sites. Sorey and Selby became interested in three parcels of property, and Sorey drafted three contracts pursuant to which the parties agreed to purchase the properties and share any profits from their resale. Each contract was basically identical except for the legal description of the properties involved and each contract contained the following provision:

> The parties may elect to finance all or part of the purchase price in which case C.E. Sorey, II will be responsible to Richard A. Selby for one-half of the purchase price, whether in cash or by financing all or part of the purchase price.

The contracts also required Sorey to pay one-half of the earnest money for any of the properties acquired.

¶2. In May, 1990, Selby entered into real estate contracts to purchase the three properties for a total price

of $ 28,500, and he obtained a loan at First National Bank (later Trustmark Bank) in his name alone. Sorey sent Selby checks for $ 1,500.00, or one half of the earnest money, as required by the contract. Selby notes, however, that Sorey only sent him additional checks for almost $2,000, which amount constituted far less than one half of the purchase price of the properties. Sorey assigned one-half of his one-half interest in the property to his friend, Ray T. Wade, and Selby later sold one-half of his interest to Taylor Martin and his wife.

¶3. In 1992, the City of Vicksburg decided to build a city convention center near the properties acquired by Sorey and Selby. The City elected to take these properties through eminent domain proceedings, and the City offered $167,000.00 as compensation for the taking. Although Sorey and Selby considered contesting this amount, they eventually decided to accept the offer. It was around this time, with the properties being sold, that the dispute between Sorey and Selby became apparent. Selby claims that in March, 1995, he gave Sorey a final opportunity to pay his one half of the purchase price of the property but that Sorey failed to do so. Sorey, however, asserts that Selby made no such offer. After the closing of the deal, Sorey demanded his claimed one-half interest in the profits, but Selby refused.

¶4. Ray Wade, Sorey's successor in interest, filed suit against Selby on April 18, 1995, in the Ninth Chancery Court District. All of the chancellors of this district recused themselves from the case, at which point this Court appointed the Honorable Denise Sweet-Owens to preside as Special Judge. The matter went to trial on April 30, 1997, resulting in a decision in favor of Selby in June 1997. Wade timely appealed to this Court.

**ISSUES**

**I. Did the trial court err in its decision that a partnership contract was not completed because certain conditions precedent were not performed when:**

**A. The issue was not raised in the defendant's pleadings nor were they tried by expressed or implied consent of the parties at the trial;**

**B. That such a decision was against the overwhelming evidence and was not based on the trial record.**

**II. Although the trial court made no decision on abandonment of the contract as raised by the defendant in its pleadings, there was no evidence to support abandonment.**

¶5. The parties devote considerable discussion to the issue of whether Selby's defense in the present case was that a condition precedent to the contract was not met or whether his defense was, rather, that Sorey had abandoned the contract. Selby's primary defense prior to trial was that Sorey had abandoned the contract, but the Chancellor found that the contract never existed due to the failure of a condition precedent. This Court concludes, however, that this issue is largely one of semantics rather than of substance. It is clear that Selby's primary argument at trial and on appeal is that Sorey failed to comply with one of the two principal requirements of the contract, namely the requirement that:

> The parties may elect to finance all or part of the purchase prince in which case C.E. Sorey, II will be responsible to Richard A. Selby for one-half of the purchase price, whether in cash or by financing all or part of the purchase price.

The contract thus explicitly required that, in addition to paying one half of the earnest money, Sorey was to either contribute one half of the purchase price in cash or else finance all or part of the purchase price in the event financing was obtained. Selby did in fact elect to obtain financing, but, contrary to the requirements of the contract, Sorey did not arrange his own financing or co-sign the notes obtained by Selby.

¶6. In his testimony, Sorey asserted that, at times, Selby gave him little encouragement to sign the notes:

Q: And it's your testimony regarding the notes at First National Bank and the renewals of those notes - - and clearing up on this - - that he told you he wanted to sign or he told you don't worry about signing ?

Sorey: He told me on two occasions that we had notes coming up or deeds of trust or whatever that had to be renewed and we would have to go down and sign it. I told him fine, to let me know when and where and I'd get a deed prepared and we would do it. I didn't hear any more from him, and the next time I saw him he said `Well, I had to go down there and take care of it; we'll get it next time.'

Sorey also explained his failure to help arrange financing by noting that he considered Selby a friend and that he viewed their relationship as an amicable one in which strict compliance with the terms of the contract were not required. Sorey testified that:

Q: Did you ever sign a side note from yourself to Mr. Selby for the balance of the purchase price on these three lots ?

Sorey: No; he never asked (me) to.

Q. Okay. He never asked you to and you never volunteered to ?

Sorey: No; it wasn't any need. We were working together on this and everything else, and he thought and I thought too, you know, we knew what was going on, and thought I did. I found out I didn't.

Selby, on the other hand, testified that, three days prior to the sale of the property to the City, he had given Sorey a final opportunity to fulfill his obligations under the contract:

Q: Were you willing up to the point that you became legally obligated to convey to the City if Mr. Sorey stepped in - -

Selby: I was willing to go the extra mile with Mr. Sorey all the way up to three days before the closing, and that was the content of that conversation. I came to Eddy (Sorey) and I said `Eddy, I want you to settle up, make a deed for yourself. I don't want to give you some sort of 1099 tax document for paying you your money after I've received it. You need to have the deed, we need to be straight.' ...

Q: Okay. On that time three days prior to you were obligated to close with the City, did he ever come up and pay the consideration required of him as shown in those three agreements between you and him ?

A: He did not. But it didn't take him long to get there after the sale had been done wanting to know where his money was.

Sorey denies that such an offer was ever made, however, arguing that he would certainly have taken the opportunity to pay his half in order to receive many times this amount in a few days.

¶7. It is apparent that the present case is, to a certain extent, one of conflicting testimony, and the Chancellor was clearly in a better position to evaluate the testimony of the parties than this Court, dealing solely with a written record. Further, although the parties disagree as to the reasons for his failure to do so, it is clear and undisputed that Sorey did not purchase or arrange financing for even close to one half of the purchase price of the properties, as required by the contract which Sorey himself drafted. The purchase price of the three lots were $6,000.00, $ 7,500.00.00 and $ 15,000.00 respectively, for a total of $28.500.00. Of this $28,500.00, Sorey only sent Selby checks for a total of $ 3,452.26 (including one half of the earnest money), and the record indicates that Sorey sent the last check to Selby on August 31, 1992. Thus, Sorey did not send any payments whatsoever to Selby during the over two and a half years prior to the taking of the properties on March 9, 1995.

¶8. Selby also points to evidence indicating that Sorey did not consider himself as having an ownership interest in the properties. Selby notes that, during Sorey's divorce in 1993, neither Sorey nor his wife listed or claimed any ownership interest in the three properties in their property settlement. Selby also notes that Sorey signed some of the checks with the notation "option" on them, and Selby argues that this notation is inconsistent with Sorey's assertions that a partnership existed. In a case which consists largely of conflicting testimony, these facts do constitute objective evidence in support of Selby's assertion that Sorey did not consider himself to be a co-owner of the properties.

¶9. Wade is faced with a difficult standard of review in the present case for at least two independent reasons. First, the present case centers largely around findings of fact and evaluations of testimony by the Chancellor, and this Court should not disturb these findings unless they are manifestly in error. *Davis v. Davis*, 643 So.2d 931, 934 (Miss. 1994) Second, the contract which gave rise to the present lawsuit was drafted by Sorey, and any ambiguities in the contract must accordingly be construed against him[1]. *Estate of Parker v. Dorchak*, 673 So.2d 1379, 1382 (Miss. 1996). Regardless of whether his failure to pay a significant amount of the purchase price constitutes a failure of a condition precedent to the contract or an abandonment of the contract, it is clear that Sorey did not comply with one of the two principal requirements of the contract. Selby undertook, by far, the primary risk between the two parties, and it would arguably be inequitable for Wade to obtain one half of the profits of the investment, considering that Sorey undertook so little of the expense and risk.

¶10. This Court concludes that the ruling of the Chancellor should be affirmed as it relates to her findings that Wade should not be entitled to recover profits under the contract. We conclude, however, that Wade, as the successor-in-interest to Sorey, is entitled to have the $ 3,452.26 which Sorey did send to Selby returned with interest. Selby appears to tacitly acknowledge that this would not be inappropriate, and he submits that this amount, plus 8 % interest, is "the correct measure of damages, if any, in this matter." Given that the trial court did not award this amount, we reverse and render to the limited extent of this recovery.

### III. Did the actions of Selby in continuing to accept payment from Sorey for principal and interest on the mortgage after he knew Sorey had not actually signed the mortgage and note, waive his actions to void the contract, and actually ratify its terms?

¶11. Sorey argues that, by accepting his checks in partial payment, Sorey ratified the contract and waived the original terms thereof. This Court finds this argument unpersuasive. As noted earlier, Selby made his last

payment on the properties over two and a half years prior to the sale of the property, and he paid, in total, less than one-seventh of the purchase price of the properties. It is not surprising that Selby would have accepted the payments that Sorey did make, and the fact that he accepted the few payments did not serve to waive or ratify Sorey's failure to comply with the contract as a whole, including the requirement that he pay or help finance one half of the purchase price. This argument is without merit.

### IV. The trial court erred in not allowing into evidence a letter written to C.E. Story, II and Richard Selby since it was relevant on the issue of payments on the mortgage.

¶12. Wade argues that the trial judge erred in refusing to admit a letter from BFI, addressed jointly to Sorey and Selby, regarding an unrelated project involving a waste disposal contract with the City of Vicksburg. Wade sought to use the letter to establish that Sorey and Selby had an ongoing business relationship. Wade acknowledges, however, that:

> The issue did not turn out to be as big a problem as it could have been, because Richard Selby did not dispute Sorey's testimony about the BFI royalty payment that was used to pay the monthly note on the mortgage of the subject property.

In the view of this Court, the letter involved a matter of little if any relevance to the present case, and the Chancellor can not be said to have abused her discretion in refusing to admit it. It is noteworthy that the letter was sent *prior* to Sorey's sending his final check in August, 1992 and the letter is thus of very little relevance as an indication of an ongoing relationship at the time of the taking of the property in 1995. Whatever slight relevance the letter may have had, Wade himself acknowledges that the testimony regarding the BFI royalty payment was not disputed. This argument is without merit, and the judgment of the trial court is affirmed, except with regard to the return of the amounts which Sorey paid to Selby, plus interest.

¶13. **AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. These ambiguities must also be construed against Wade, as Sorey's successor-in-interest.