McMILLIN, C.J., for the court.
¶ 1. Kenneth D. Ross filed an action in the Chancery Court of Jackson County seeking to compel the issuance to him of additional shares in Gulf Group, Inc., a Mississippi corporation, that would, in combination with the shares already issued to him, equal ten percent of the issued and outstanding shares in -the corporation. Rosalind Ross and John Ross, Sr. were later added as additional plaintiffs when it was made known to the court that Kenneth Ross had assigned his cause of action to these individuals. The defendants in the action were the corporation and three individuals alleged by Ross to be in control of the board of directors of the corporation and, thus, vested with the authority to cause the additional shares demanded in the complaint to be issued. The individual defendants were Jeremiah O’Keefe, Sr., W.P. Bridges, Jr., and Susan 0. Snyder. The chancellor denied any relief to the plaintiffs and they have now appealed. For reasons we will proceed to set forth, we affirm the judgment of the chancellor.
¶ 2. In order to avoid unnecessary prolixity, those claiming entitlement to additional shares in Gulf Group will be collectively referred to as Ross. The various parties who were defendants at trial and are appellees before this Court will be referred to, when appropriate, as the Ap-pellees.
I.
The Nature of Ross’s Claim
¶ 3. Ross’s complaint does not explain with any clarity the nature of his claim asserted against the Appellees. It only asserts that he “at one time owned 10% of the common stock of Defendant Gulf Group, Inc.” The complaint goes on to state that the Appellees “have previously issued to [Ross] 3.3% of that common stock ... leaving a balance of 6.7% of its common stock unissued and due and owing to the Plaintiff.”
¶ 4. From the record of the trial of this cause, it would appear that Ross’s claim is, at its foundation, a breach of contract claim. He bases his entitlement to additional shares in Gulf Group on his contention" that the corporation, organized to facilitate the merger of two independent corporations, was the handiwork of his efforts and that he had been promised a ten percent stake in the company as compensation for his work in bringing the merger to fruition.
¶ 5. It is uncontradicted that Gulf Group is, in fact, the product of the merger of Gulf National Life Insurance Company, a corporation controlled principally by O’Keefe, and Bridges Mortgage Company, a corporation controlled by Bridges. It is also uncontradicted that Ross performed substantial duties in regard to bringing the merger about. However, the evidence shows that Ross was, during that time, working under contract with Gulf National to assist O’Keefe in a consulting capacity in various business endeavors, and that Ross was being compensated for that consulting work at the rate of $100,000 per year. O’Keefe contended in his testimony that there had never been an agreement to compensate Ross for his work on this specific merger beyond the compensation arrangement already in existence. He said, to the contrary, the decision to give Ross an ownership interest in the new corporation was more in the nature of a gift, not legally required, but offered in appreciation for Ross’s efforts in bringing the *1206 merger about and in anticipation that it would provide incentive for Ross to remain interested in the company’s future success. O’Keefe testified that initially he had agreed that Ross should have ten percent of O’Keefe’s percentage ownership in the new corporation, but that Bridges, upon learning of what O’Keefe planned to do, had agreed to contribute a pro rata portion of the stock that O’Keefe intended to convey to Ross. Both O’Keefe and Bridges denied any contractual obligation on the part of either or both of them to vest Ross with a ten percent ownership of the company’s common stock, or, for that matter, any legal obligation to convey any part of the ownership to Ross. Rather, their act of setting apart shares to Ross in any amount was a gratuitous act on their part.
¶ 6. Ross’s contention at trial, however, was that his earlier consulting contract was nonexclusive and permitted him time to work on other personal projects, whereas the demands of working out the merger were so great that the job required him full-time and that the offer of ten percent ownership in the resulting company was in recognition of this increased commitment of time and effort. Despite this, the Ap-pellees were able to produce documentary evidence in the form of written communications from Ross indicating his understanding that the $100,000 consulting fee was, in fact, intended to cover his efforts in regard to the merger and that he had received the stock as an incentive to prospectively ensure his continued interest in and effort on behalf of Gulf Group.
¶ 7. None of the written documentation surrounding the formation of Gulf Group mentions the existence of Ross’s purported contractually-enforeeable claim to a ten percent stake in the anticipated corporation. The original agreement for formation of Gulf Group to act as a holding company for Gulf National Life Insurance Company and Bridges Mortgage Company contained a detailed listing as to how all shares anticipated for issuance would be issued, and Ross did not appear on that listing at all. O’Keefe and Bridges, as owners of “a substantial portion of the issued and outstanding common stock” of Gulf Group, entered into a separate agreement styled “Shareholders’ Agreement” that contained this provision:
It is further agreed that Kenneth D. Ross shall acquire voting common stock, non-voting common stock, and/or preferred stock subsequent to the execution hereof, upon terms and conditions to be agreed upon in writing between O’Keefe, Ross, and Bridges ....
¶ 8. Noteworthy in that passage is both (a) a lack of any indication of the underlying reason for such acquisition by Ross and (b) a lack of commitment by either O’Keefe or Ross to convey to Ross any certain percentage of the contemplated shares in the new corporation. Subsequently, the principal parties to the merger entered into an “Addendum to Agreement for Formation of Holding Company” on July 31, 1991, that included a revised listing of prospective share ownership in the new corporation. That revised listing showed Kenneth D. Ross would receive 132 voting common shares, 2,475 non-voting common shares, and 448 preferred shares. It is not disputed that these numbers do not reflect ten percent of the total anticipated issuance of any of the three classes of stock.
¶ 9. Ross was selected to act as secretary of Gulf Group during the initial stages of formation of the company, and as a result, was instrumental in the issuance of the actual stock certificates for the various shares. Included in that duty was an obligation to sign each stock certificate. Those certificates (or copies of them) were introduced into evidence at trial, each one *1207 bearing a date of July 31, 1991, and showing Ross’s signature thereon as corporate secretary. These exhibits indicate that the stock certificates were issued in exact compliance with the listing contained in the addendum described in the previous paragraph of this opinion.
¶ 10. The principal evidentiary basis relied upon by Ross to substantiate his own testimony that he had a contractual right to a ten percent interest in Gulf Group consisted of certain statements made by various persons associated with the corporation in the years after formation to the effect that it was their understanding that Ross did, in fact, own a ten percent interest in the company.
¶ 11. Ross testified that he did not actually discover that he had not been issued the proper number of shares until approximately August 1993, when he applied for a loan and sought to offer his stock in Gulf Group as collateral for that loan. According to the evidence, the bank loan officer, in attempting to gain information that would be helpful in valuing the stock for collateral purposes, learned that Ross’s shares did not constitute ten percent of the issued shares. Some time later, Ross commenced this litigation seeking to enforce his alleged contractual right to the issuance of the number of additional shares in the corporation necessary to increase his percentage of ownership to the contracted-for ten percent.
II.
The Chancellor’s Ruling
¶ 12. The suit was filed on July 22, 1996. The chancellor ultimately rejected Ross’s claims on two principal grounds. Conceding for sake of argument only that Ross did, in fact, have a contractual claim to compel the issuance to him of stock shares totaling a ten percent ownership in Gulf Group, the chancellor concluded that the breach of that purported contract occurred on July 31, 1991, the date the shares in the stock were actually issued. The chancellor found that Ross’s claim, being contractual in nature, was governed by the statute of limitations that required such actions to be commenced within three years and that Ross’s claim, filed almost five years after the initial stock issuance, was barred as untimely. Additionally, the chancellor held that, even were he in error in regard to the statute of limitations bar, Ross had failed to present evidence with the necessary persuasive power to carry his burden of proof to establish his ownership claim by a preponderance of the evidence.
III.
Preliminary Issue
¶ 13. The chancellor, as a part of his decision, entered a lengthy document entitled findings of fact and conclusions of law. Ross points out — and the Appellees do not dispute the fact — that the chancellor’s findings and conclusions are essentially identical to proposed findings of fact and conclusions of law suggested by the Appel-lees. In that circumstance, the duty of a reviewing court on appeal is somewhat altered in that we are instructed not to give the same deference that would be afforded a more independently produced document, but are to give heightened scrutiny to the chancellor’s determinations. Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265-66 (Miss.1987).
¶ 14. We find as a practical matter that this requirement of heightened scrutiny has little impact on the issue of whether Ross’s claim is barred by the applicable statute of limitations since the critical facts governing that question are not in dispute. Nevertheless, at Ross’s urging — entirely proper and justified under the circum *1208 stances of this case — we will consider all aspects of the chancellor’s ruling under a heightened scrutiny standard in accordance with the dictates of Rice Researchers.
IV.
Statute of Limitations
¶ 15. A cause of action for breach of contract arises upon the event of the breach. Johnson v. Crisler, 156 Miss. 266, 267, 125 So. 724, 725 (1930). In this case, all anticipated shares to be issued for Gulf Group were issued on July 31, 1991, not only with Ross’s full knowledge but with his active participation acting in the role of corporate secretary. The evidence showed that he executed each of the individual stock certificates that were being issued and that the issuance conformed exactly to the share listing contained in the addendum that was executed by the principal participants in the new corporation, O’Keefe and Bridges, after arrangements had been made to vest Ross with some part of the ownership of Gulf Group. No evidence suggests that Ross was, at this critical time, somehow kept in the dark regarding the total of shares being issued. A simple mathematical computation taking only the briefest of time would have plainly revealed to Ross that this initial stock issuance did not provide him with a ten percent interest in the company. No evidence was presented that would have reasonably led Ross to believe that there were future contemplated stock issuances contemplated to remedy the shortfall or that he was otherwise induced into inactivity in regard to asserting whatever claim he thought appropriate to ensure his receipt of the number of shares he believed himself entitled to receive.
¶ 16. Ross did present evidence indicating that a number of persons associated with the corporation had, in the period of time after the initial stock issuance, made statements indicating their understanding that Ross did, in fact, have a ten percent ownership interest in the company. None of that evidence was accompanied by evidence tending to show that Ross was intended to, or did in fact, rely on those statements to prevent him from discovering the true nature of his ownership interest.
¶ 17. Mississippi Code Annotated Section 15-1-67 provides that the limitation period to sue on a cause of action fraudulently concealed shall not begin to run until “the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.” Miss.Code Ann. § 15-1-67 (Rev.1995). Even were there to be legitimate arguments that the various post-issuance statements by persons associated with the company were fraudulent in nature because their purpose was to deceive Ross or induce him not to investigate the matter further, we do not think that this statute would afford Ross any relief. We are satisfied that a person of Ross’s apparent business experience and acumen, holding a position of high responsibility in Gulf Group that would certainly have given him access to all pertinent company documents, and having actively participated in the very stock issuance which he now claims was incorrect, could beyond question through the exercise of reasonable diligence discovered what he perceived to be a shortage in his percentage of ownership on July 31,1991.
¶ 18. Thus, if the issuance of shares to Ross totaling less than a ten percent stake in the newly-created business unaccompanied by some indication that additional stock issues or other corrective actions were contemplated constituted a breach of Ross’s claimed contractual right of compensation for his efforts in bringing the *1209 merger to fruition, there can be no legitimate dispute that the cause of action accrued on July 31, 1991, and that, under the provisions of Section 15-1-49 of the Mississippi Code, the cause of action expired three years from that date. Miss.Code Ann. § 15-1-49 (Rev.1995).
¶ 19. Even under whatever heightened scrutiny is due the chancellor’s decision in this regard based on the method by which his findings of fact and conclusions of law were produced, we are satisfied that his decision to apply the bar of the statute of limitations to Ross’s claim was a correct one for which there is no basis for this Court to intercede.
V.
The Chancellor’s Decision on the Merits
¶ 20. While we consider the bar of the statute of limitations properly imposed by the chancellor to finally resolve this matter, we nevertheless feel it proper to observe that the chancellor, in trials of this nature, sits as finder of fact. Wade v. Selby, 722 So.2d 698, 701(¶ 9) (Miss.1998). Because he observes the witnesses first hand, thus enabling him to arrive at an informed determination as to what weight and worth each witness’s testimony ought to be due, his determination of disputed issues of fact is entitled to substantial deference when being tested on appeal. Richton Bank & Trust Co. v. Bowen, 798 So.2d 1268, 1273 (¶ 14) (Miss.2001).
¶ 21. On sharply conflicting versions of the facts, the chancellor determined that the testimony of the Appellees and those who gave evidence on their behalf was credible and that the assertions of Ross, unsubstantiated by any documentary evidence, was not credible.
¶ 22. No part of the Appellees’ contention that whatever portion of ownership in Gulf Group that was ultimately apportioned to Ross did not constitute contractually-due compensation for services related to the merger but was, instead, in the nature of a gift was impeached or substantially contradicted by any evidence other than Ross’s own testimony, which the chancellor concluded to be not worthy of belief. On the other hand, documentary evidence produced at trial clearly indicated that, in the past, Ross had affirmatively stated in another context that his compensation for work on the merger was covered as a part of the $100,000 annual consulting fee he was being paid by O’Keefe through his pre-merger corporation, Gulf National Life Insurance Company. Additionally, there was evidence that Ross had informed another person that the stock was received, not as an agreed-upon compensation for services in the merger, but at least partially as an incentive for him to maintain his interest in the future success of the business. A transfer of stock made on that basis, unaccompanied by any binding commitment on the recipient to actually commit some measure of effort to the corporate business, would not appear to be founded on principles of contract that would give the recipient a claim for the promised shares even in the event the transferor later rethought the transaction and decided to convey something less than an amount the transferor might have indicated was originally within his contemplation, or, in fact, nothing at all.
¶ 23. Ross’s obligation in order to prevail on his claim was to show something more than his understanding — or even the understanding of the other members of the corporation — that he was to have a ten percent interest in Gulf Group. His disappointment in not receiving a full ten percent stake in the company, no matter how profound, is not of itself sufficient basis to compel the remaining shareholders to convey additional shares to him. Rather, *1210 there must be some basis in law that would obligate such a transfer, which in this case would necessarily be proof of a binding contract, supported by adequate consideration, fully performed by Ross, in exchange for which some entity having the authority to make the transfer obligated itself to convey the requisite number of shares to Ross. Krebs v. Strange, 419 So.2d 178, 181 (Miss.1982). The chancellor found as a matter of fact that Ross failed to present convincing evidence that this was the case. Even under the heightened scrutiny standard required by Rice Researchers, our own in-depth review of the evidence in this record does not leave us persuaded that the chancellor was manifestly in error or committed an abuse of discretion in concluding that the Appellants’ evidence on the critical issues was more credible and worthy of belief than the evidence produced by Ross. Therefore, even disregarding the procedural bar of the statute of limitations, we can find no basis on the merits of this case as contained in this record to disturb the chancellor’s decision that Ross had failed to carry his burden of proof to show by a preponderance of the evidence his entitlement to relief.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND BRANTLEY, JJ„ CONCUR.
MYERS, J., NOT PARTICIPATING.